## SCOTT V. TOOMEY.

1. Where one makes a water-right location on unoccupied public lands of the United States opened up to settlement, his rights, thereto, under Rev. St. U. S. §§ 2339, 2340, as against one who thereafter settles thereon and pre-empts the lands, are not affected by the fact that, while the lands were part of an Indian reservation, such pre-emptor built a cabin thereon, he having gone away before it was opened up for settlement, and not returned till after the water-right location was made; and it is immaterial that he left an agent in possession, as by Sec. 2259 a pre-emptor must make settlement in person.

2. Where the lands on which one makes a water-right location are in fact unoccupied public lands of the United States, it is immaterial that it is at the time erroneously contended by another that the location is on lands claimed by him.

3. Where one makes a water-right location on unoccupied public lands of the United States, but before he has constructed a ditch across the lands to conduct the water to his premises another acquires rights in the lands as a pre-emptor, such pre-emptor, and one to whom he conveys the lands 15 years thereafter, will be e stopped to deny the right to maintain the ditch, the pre-emptor having been present when the ditch was surveyed and constructed, and having made no objection thereto during the 15 years he owned the land, and having by permission of the owner of the water rights, used surplus water from the ditch, and opportunity to make other water-right locations having been lost by the lapse of time and change in the condition of the country.

(Opinion filed June 17, 1896.)

Appeal from circuit court, Lawrence county. Hon. A. J. PLOWMAN, Judge.

Action to enjoin defendant from diverting the waters of a running stream and from committing a trespass. Defendant had judgment and plaintiff appeals. Affirmed.

The facts are stated in the opinion.

*G. C. Moody* and *William S. Elder*, for appellant.

Defendant, by his assertion of ownership of the ditch, and of his right to divert the waters of Higgins Gulch Creek, and flow them through the ditch across plaintiff's land, claims an ownership in .the realty. Washburn, Easements, p. 18; De

Hera v. United States, 5 Wall. 599; Veghte v. Raritan, 4 C. E. Green, 153; Drake v. Wells, 11 Allen, 141; Foot v. N. H. & N. Co., 23 Conn. 214; Union Mill. & Min. Co. v. Danberg *et al.*, 2 Sawy. 450. The mere acquiescence of Rosenbaum in the various acts of Toomey in the location of his alleged water right and in the construction of his ditch, and its enlargement and extension at different times, creates no estoppel, either as against Rosenbaum or against this plaintiff. Lux v. Haggin, 69 Cal. 255; Union M. & M. Co. v. Danberg, 2 Sawy. 450; Stockman v. Riverside, 64 Cal. 57; Brown v. Bowen, 30 N. Y. 519; Biddle Boggs v. Mercer M. Co., 14 Cal. 279. The policy of the government seems clearly to favor him who appropriates both land and water as against an appropriator of the water merely. Sturr v. Beck, 133 U. S. 541; 6 Dak. 80; Crandall v. Wood, 8 Cal. 136; Taylor v. Spring Creek W. & M. Co., 5 Cal. 197. Rosenbaum having settled upon the land in 1876, when did his rights attach thereto, so as to cut off Toomey's right to appropriate the waters of Higgins Gulch Creek which flowed across the land located or settled upon by Rosenbaum? See Caledonia Gold Min. Co. v. Noonan, 3 Dak. 191; 7 Sup. Ct. Rep. 911; Comp. Laws, § 2771; Sturr v. Beck, 10 Sup. Ct. Rep. 350. There is no element of estoppel in the case, which would operate to transfer as by a solemn conveyance the real property of plaintiff to defendant. Gull River L. Co. v. Keefe, 6 Dak. 160; Brant v. Coal Co., 93 U. S. 335; Davis v. Davis, 26 Cal. 23; Ferris v. Chapman, 10 Cal. 589.

*McLaughlin & McLaughlin*, for respondent.

The acts of Rosenbaum, prior to November 10th, 1876, when he left for Missouri, were illegal. Noonan v. Caledonia Min. Co., 121 U. S. 393; Kendall v. San Juan Min. Co., 144 U. S. 658; S. C. 12 Sup. Ct. Rep. 779. The pre-emptor does not acquire a vested right to the water flowing over the land until he proves up and pays for the land, and prior to that time the water may be appropriated. Osgood v. El Dorado Water Co.,

56 Cal. 571; Farley v. Spring Valley Co., 58 Cal. 142; Tenem Ditch Co. v. Thorpe, 20 Pa. 588; Ellis v. Pomeroy Imp. Co., 21 Pac. 27; Geddes v. Parrish, 21 Pac. 314. See also Wells v. Pennington County, 2 S. D. 1, 48 N. W. 305; Smith v. Pennington County, 2 S. D. 14, 48 N. W. 309. Rosenbaum would be estopped from now claiming the waters of Higgins Gulch. Eickleberg v. Soper, 1. S. D. 563; Parliman v. Young, 2 Dak. 176; Kirk v. Hamilton, 102 U. S. 79; Moore v. Brownfield, 39 Pac. 113. If the plaintiff could escape the effect of our first two propositions, she would fail because of laches. Peebles v. Reading, 8 Serg. R. 493; Oil Co. v. Marbury, 91 U. S. 592; Schlawig v. Purslon, 59 Fed. 848; Johnston v. Standard Mfg. Co., 13 Sup. Ct. Rep. 585, 148 U. S. 360; Felix v. Patrick, 143 U. S. 317, 12 Sup. Ct. Rep. 862; Hoyt v. Latham, 143 U. S. 553, 12 Sup. Ct. Rep. 568; Hammond v. Hopkins, 143 U. S. 224, 12 Sup. Ct. Rep. 418; Great W. Mfg. Co. v. Woodmas, 23 Pac. 908.

CORSON, P. J. This was an action to enjoin the defendant from interfering with or diverting the waters of Higgins creek, near Spearfish City, Lawrence county, and from carrying the same across plaintiff's premises. The defendant claimed a right to the waters of said creek under and by virtue of a prior appropriation, and the right to carry the same by means of a ditch and flume across plaintiff's premises, by virtue of such prior appropriation of the waters of said creek, under the act of congress and the rules and customs in force in the Black Hills country. The case was tried by the court without a jury and from its findings and judgment in favor of the defendant the plaintiff appeals.

The finding of the court as to the location of the water right by the defendant is as follows: "(1) That on or about the 20th day of April, 1877, the defendant, Daniel J. Toomey, who was then and there a citizen of the United States, went upon the unoccupied public lands of the United States, and diverted

the waters of Higgins gulch from their channel, and at the same time posted a notice claiming all the waters, or three hundred inches, of Higgins gulch, for agricultural, domestic, milling and other useful and beneficial purposes. That thereafter, and prior to the first day of July, 1877, said Daniel J. Toomey constructed a ditch from the point of diversion to his ranch in Lawrence county, South Dakota, and used the water on said ranch for irrigating purposes, and has used said water for such purposes ever since that time." The court's finding as to the inception of plaintiff's title to the land upon which the defendant's water right was located and over which his ditch and flume were constructed is as follows: "(3) That on the 13th day of May, 1877, one George Rosenbaum settled upon a tract of land. That at that time the land was unsurveyed public land of the United Statss, and was surveyed from the 14th to the 31st day of October, 1878. That the plat of said land was filed in the local land office at Deadwood, Dakota, on the 17th day of March, 1879, and that thereafter the said Rosenbaum filed his declaratory statement for the said land, declaring his intention to pre-empt the same, on the 24th day of May, 1879, being within ninety days after said plat had been filed in the local land office; and in said declaratory statement said Rosenbaum alleged that his settlement upon said land was made on May 13, 1877. That at the time of the survey of said land Rosenbaum did not inclose said land, nor until some time in the year 1877." It is through George W. Rosenbaum, mentioned in this finding, that plaintiff claims title. The court concludes as matters of law as follows: "(1) That the defendant, Daniel J. Toomey, is the owner of a water right on Higgins gulch, and is entitled to so much of the waters of Higgins gulch as can be diverted to the west ditch, described in the evidence; and that he appropriated the same before any other rights were acquired therein." "(6) that the said plaintiff, Ellen Scott, having bought the land with the ditches and flume upon it, is chargeable with notice of the actual condition

of the land, and also with notice of any facts which she might have obtained by reasonable inquiry as to the said ditches and said flumes; and her grantor being estopped to claim anything as to said ditches, she is also estopped, and also in the same position that he would be as to laches; and as to the flume she would have no power or greater right in reference to the same than he would have." It will be observed that the court finds that defendant's water right was located April 20, 1877, and that Rosenbaum's settlement was made May 13, 1877, nearly a month after defendant's water right was located. The natural flow of Higgins creek was over the land now claimed by the plaintiff. The goverment patent to Rosenbaum bears date of August 1, 1883, and contains the following condition or reservation: "To have and to hold the same, together with all rights, privileges, immunities and appurtenances, of whatsoever nature thereunto belonging, unto the said George W. Rosenbaum and to his heirs and assigns forever; subject to any vested and accrued water rights for mining, agricultural, manufacturing or other purposes, and rights to ditches and reservoirs used in connection with such water rights, as may be recognized and acknowledged by the local customs, laws, and decisions of courts, and also subject to the right of the proprietor of any vein or lode to extract and remove his ore therefrom, should the same be found to penetrate or intersect the premises hereby granted, as provided by law." This condition or reservation was inserted under and by virtue of Secs. 2339, 2340, Rev. St. U. S., enacted in 1866 and 1870, which read as follows: "Whenever, by priority of possession rights to the use of water for mining, agriculture, manufacturing or other purposes, having vested and accrued, and the same are recogized and acknowledged by the local customs laws and the decisions of the courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified, is acknowledged and confirmed; but whenever any per-

son, in the construction of any ditch or canal, injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage." Sec. 2340: "All patents granted, or pre-emption or homestead allowed, shall be subject to any vested or accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by the preceding section." This has been the law in the Black Hills country, by custom and the decision of the courts, since February 28, 1877. The rights of the parties must therefore be determined by priority of location, as between the water right of the defendant and the pre-emption right of the plaintiff's grantor.

The findings of the court were excepted to upon the ground that the evidence was insufficient to sustain them, and it becomes necessary, therefore, to review the evidence, so far, at least, as to ascertain if there is a preponderance of the same against the finding of the court. It is contended by the plaintiff that the evidence is undisputed that the plaintiff's grantor built a cabin upon this quarter section in the summer of 1876, and that in the fall of that year he left the Spearfish valley, and went to the state of Missouri, leaving the property in charge of an agent, and returned in the spring of 1877; but whether before or after the defendant made the location of his water right, the evidence is conflicting. Prior to February 28, 1877, when the treaty with the Great Sioux Nation opening up the Black Hills country to settlement was ratified, no legal rights could be acquired in the public domain, as up to that time the settlers were trespassers. Appellant contends, however, that, though the act of settlement of plaintiff's grantor in 1876 was a trespass, yet, under the decision of Caledonia Min. Co. v. Noonan, 3 Dak. 191, 14 N. W. 426, affirmed by the supreme court of the United States under the title of Noonan v. Mining Co. 121 U. S. 393, 7 Sup. Ct. 911, his acts prior to

February 28, 1877, will be recognized. The headnote of that decision is as follows: "Where a party was, on the 28th day February, 1877, in possession of a mining claim in the Black Hills of Dakota, within the Indian reservation, with the requisite discovery, with the surface boundaries sufficiently marked, with the notice of location posted, with a disclosed vein of ore, he could, by adopting what had been done, causing a proper record to be made, and performing the amount of labor or making the improvements necessary to hold the claim, date his rights from that day; and such location, labor, and improvements gave him the right of possession." Assuming that the principle established by that decision is applicable to agricultural lands under the findings of the court, Rosenbaum had not resumed possession of the land at the time the defendant made his water-right location. Undoubtedly, if Rosenbaum had been living upon, or in the actual possession of, his land when the country was opened up to settlement, or at any time prior to the location of the water right by the defendant, he might have availed himself of the acts done by him in the erection of the cabin, staking his land, etc.; but if, before Rosenbaum's return, the defendant made his location, his right must be held superior. The fact that Rosenbaum had erected a cabin in 1876, and marked the boundaries of his land, could not avail him, if before his actual return and possession of the land defendant had acquired the water right. It is contended that though Rosenbaum was absent from the country on February 28th, he was in possession by his agent. But the evidence as to the agent's possession was very indefinite and unsatisfactory. He did not occupy the cabin, nor, so far as the evidence discloses, was he upon the land. He says he sent some one there in the spring, but at what time does not appear. Upon the evidence, as disclosed by the record, this court would not feel justified in disturbing the findings. The contention that, as the defendant's water right was made upon land claimed at the time by one Jones, it was invalid, does not seem to us to pos-

sess much merit. The survey subsequently made demonstrated that the location was in fact made upon the quarter section now claimed by the plaintiff, and by the findings of the court, upon what was then vacant and unappropriated public land. As we conclude that we would not be justified in disturbing the findings, the fact that the location of the water right was made upon such unappropriated public land may be regarded as established. But it is doubtful if the doctrine laid down in the Caledonia case is applicable to pre-emption claims. While no settlement or residence upon his claim is required of the locator of a mining claim in order to initiate or perfect his title thereto, the pre-emptor is required to make settlement upon, and to inhabit or dwell upon, his claim as a preliminary condition to his right to the land. Sec. 2259, Rev. St. U. S. provides, that "every person * * * who has made, or who may hereafter make a settlement in person on the public lands subject to pre-emption, and who inhabits and improves the same, and who has erected or shall erect a dwelling thereon, is authorized to enter," etc. It will be observed that the settlement required must be made by the pre-emptor in person, not by an agent. An actual settlement and an actual residence upon his claim is required of the pre-emptor, in order to entitle him to enter the same. It would seem to necessarily follow, therefore, that Rosenbaum could have acquired no right to his claim through any acts of an agent between February 28th and his return to the county in the county in the spring of 1877. All the acts of Rosenbaum in the way of settlement in 1876 were in violation of law, and did not, under the law, constitute a settlement upon the land. Until his actual return to the claim, therefore, and actual settlement upon the land in the spring of 1877, he acquired no right to the same. With the findings as they now stand, the conclusion necessarily follows that, the defendant having appropriated the water of Higgins gulch prior to the initiation of the title of the plaintiff's grantor to the land upon which the same was located, the defendant is entitled to the waters of that gulch to the extent of his appropriation.

This brings us to the question of the right of the defendant to maintain his ditch over and across the premises of the plaintiff. It would seem from the evidence that the ditch was not laid out or constructed until after the settlement of Rosenbaum of May 13, 1877, as found by the court, and, assuming that Rosenbaum's right to the land as against the appropriation of any right of way by the defendant over and across the same for his ditch and flume because vested by his act of settlement, there would seem to be some difficulty in sustaining the defendants claim to such right of way, unless it can be sustained on the ground that Rosenbaum would be estopped by his conduct and declarations from now questioning the right of the defendant to maintain such ditch, and consequently that the plaintiff is estopped from asserting any such claim. As a defense to the claim of plaintiff regarding said ditch, the defendant, in his answer alleged as follows: "(6) That after the location of said water rights said Rosenbaum agreed with said defendant to assist in building said ditch, and said ditch was built with the full knowledge, consent and acquiescence of said Rosenbaum, and defendant expended large sums of money in constructing said ditch, all without any objection on the part of said Rosenbaum and his grantees are estopped from asserting any claim to said ditch and water right, if they ever had any." The court's findings upon the question of laches and estoppel is as follows: "That Rosenbaum was present when the defendant, Daniel J. Toomey, surveyed the line of his ditch, and made no objection, and that the said Rosenbaum made no objections to the diversion of the waters of Higgins gulch, nor to the digging of the ditch by the defendant, Toomey, from the time it was completed until he parted with the title to the land. That he knew where the water was used, and at various times he and his tenants, by the permission of the defendant, Toomey, used the surplus water of the ditch for the purpose of irrigating the above described tract of land. The ditch referred to is the one on the west side

of Higgins gulch, and is called in the testimony the 'west ditch.'
That in the year 1880 the defendant, Toomey, at the request of
said Rosenbaum, ran his ditch to the west line of Rosenbaum's
land, in order that his ditch might run along the line, and not cut
up the land of Rosenbaum into two parts; and at the same time
he abandoned his old ditch as to that portion of it, the old ditch
having been constructed upon the supposed west line of the
Rosenbaum place before the survey was made. That in mak-
ing said change said Toomey expended between fifty and one
hundred dollars, and since 1880 the said ditch has been used
constantly by said defendant, Toomey, and surplus water has,
at various times, by permission of the defendant, Toomey, been
used by Rosenbaum and his tenants." The respondent con-
tends that these acts on the part of Rosenbaum do not consti-
tute a technical estoppel, and therefore do not bind the plaintiff.
The acts, conduct and silence of Rosenbaum, and his virtual
recognition of defendant's title to the water and right to carry
the same over his land for a period of over 15 years permitting the
defendant to spend money, time and labor upon the water right
and ditch, and entering into various arrangements with the de-
fendant for the use of portions of the water during that time,
as found by the court, certainly make a very strong case of
laches, and constitute, under the later decisions of the supreme
court of the United States, an estoppel in *pais.* Rosenbaum
knew all these years that defendant claimed to be the owner of
the water right and ditch, and claimed that he was rightfully
carrying the water appropriated over the land of Rosenbaum,
and was constructing his ditches and expending money thereon
on the faith that his right was fully recognized by Rosenbaum.
If Rosenbaum made any claim to the water, or denied defend-
ant's right to carry the same over and across his premises, it
was not only his duty to speak, but to act. As was said in
Kirk v. Hamilton, 102 U. S. 79: "He remained silent while
the other expended large sums in improvements, and in effect
disclaimed title in himself. He was silent when good faith re-

quired him to put the other on guard.  He should no now be heard to say that that is not true which his conduct had unmistakably declared to be true, and on the faith of which others acted."  And in Dickerson v. Colgrove, 100 U. S. 578, the court said:  "The estoppel here relied upon is known as an equitable estoppel, or estoppel in *pais*.  The law upon the subject is well settled.  The vital principle is that he who, by his his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted.  Such a change of position is strictly forbidden.  It involves fraud and falsehood, and the law abhors both.  This remedy is always so applied as to promote the ends of justice.  It is available only for protection, and cannot be used as a weapon of assault.  It accomplishes that which ought to be done between man and man and is not permitted to go beyond this limit.  It is akin to the principal involved in the limitations of actions, and does its work of justice and repose where the statute cannot be invoked.  Here, according to the finding of the court, the time of adverse possession lacked but a year and a month of being twenty years, when it is conceded the statutory bar would have been complete."  Campbell v. Shivers (Ariz.), 25 Pac. 540.  In this case nearly 17 years had elapsed since the location of the defendant's water right, and his ditch constructed before this action was commenced, and his right apparently acquiesced in and recognized by Rosenbaum for 15 years, and by the plaintiff for 2 years.  Not only were defendant's claims recognized by Rosenbaum, but the various transactions between them were entirely inconsistent with any claim to the water right or objection to the continuance of the original ditch by the defendant.  It was shown by the evidence that had Rosenbaum made any claim to the water, or made any objection to the ditch of defendant at about or soon after the time of their location in 1877, the defendant could easily have made other advantageous water right locations, but which, by lapse

of time and the change in the condition of the country has now become impracticable. During all the 15 years, it appears from the evidence, that Rosenbaum resided upon the farm, only a short distance from the dam and head of defendant's ditch, and that defendant resided upon his adjoining farm, and used the water during each season during all that time. We are of the opinion, therefore, that under the doctrine laid down in the later decisions of the supreme court of the United States Rosenbaum would have been estopped from asserting any rights adverse to the defendant in this case, and that the plaintiff occupies no better position than would Rosenbaum have occupied had he been the plaintiff in the action. To hold otherwise would be to allow the conduct of Rosenbaum to result greatly to the injury of the defendant, who seems to have acted in the utmost good faith in the transaction.

It is contended by counsel for the respondent that the right of way for ditches and flumes, recognized by the acts of congress, continues until the patent of the pre-emptor is issued and he cites Osgood v. Mining Co., 56 Cal. 571; Farley v. Irrigating Co., 58 Cal. 142; Ditch Co. v. Thorp (Wash.), 20 Pac. 588; Ellis v. Improvement Co. (Wash.), 21 Pac. 27; Geddes v. Parrish, Id. 314—which seem to fully sustain his position. But since those decisions were made the very important case of Sturr v. Beck, 133 U. S. 541, 10 Sup. Ct. 350, a case from the Black Hills country, has been decided, in which the supreme court of the United States held that in a homestead entry, when completed by a full compliance with the statute on the part of the settler, the patent relates back to the date of the filing, and cuts off all intervening adverse claims to the water running thereon. This decision was as to the right of homesteaders only, and nothing is said as to pre-emptors. But Mr. Kinney in his recent work on irrigation, takes the view that under that decision all the cases hereinbefore cited are, in effect, overruled and that the decision of Sturr v. Beck applies to pre-emption claims as well as homestead claims. In this decision we have

assumed, without deciding, that such is the effect of that decision. We conclude, therefore, that the acts, conduct and silence of the plaintiff's grantor, Rosenbaum, for 15 years, were such as to estop him, and does estop the plaintiff from now in any manner disturbing defendant's main ditch, constructed to carry the waters of said gulch across the plaintiff's land. The judgment of the court below is therefore affirmed.