Argued February 21, decided March 19, rehearing denied May 14, 1912.

## CANTRALL *v.* STERLING MINING CO.

[122 Pac. 42.]

APPEAL AND ERROR—TRANSCRIPT—TIME OF FILING—"JUSTIFICATION."

1. Where exception was taken to the sureties on appeal, and, by consent, the justification was postponed from time to time and finally waived by respondents, the 30 days within which the transcript must be filed under Section 554, subd. 2, L. O. L., to prevent the appeal from being deemed abandoned began to run from the date of waiver of justification, which was equivalent to a "justification," within Section 550, subd. 4, providing that from the expiration of the five days allowed to except to the sureties, or from the justification thereof, if excepted to, the appeal shall be deemed perfected, so that the transcript was filed in time, where filed pursuant to an order made during the 30 days so computed, extending the time for filing as authorized by Section 554, subd. 2.

VENDOR AND PURCHASER—BONA FIDE PURCHASERS—RECORDS.

2. One purchasing land and water rights, after the owner had relinquished certain water rights appurtenant thereto by a duly recorded deed, took no better title to the water rights than the owner had after the relinquishment.

WATERS—PRESCRIPTIVE RIGHTS—ADVERSE CHARACTER OF CLAIM.

3. To entitle the parties or privies to an agreement relinquishing and apportioning water rights to afterwards claim such rights by adverse user, they must have made some affirmative assertion of ownership under a claim of right, open, notorious, and exclusive in character, which amounted to such an invasion of the owners' title as would give them a cause of action.

WATERS—IRRIGATION RIGHTS—ACTION TO RESTRAIN INTERFERENCE— EVIDENCE.

4. In a suit to enjoin interference with water rights, under a relinquishment of all rights in the waters of a stream, except an amount sufficient to irrigate plaintiff's land, evidence *held* to show that 500 inches, in continuous use for a week at a time, would be sufficient to irrigate 100 acres of plaintiff's land.

WATERS—APPROPRIATION—AMOUNT NECESSARY.

5. One is entitled to use water only in such quantities and at such times as may be reasonably necessary for some useful purpose, either existing or fairly contemplated in the future, and cannot waste water even for a useful purpose.

WATERS—RESERVATIONS—MODE OF USE.

6. Water may be used alternately by persons entitled to given quantities of the waters of a stream by virtue of a reservation in a grant of waterrights.

WATERS—RELINQUISHMENT—CONSTRUCTION OF DEED.

7. An owner of land relinquished to certain persons any right he might have to the waters of a creek, excepting and reserving to himself so much of the water as shall be necessary for irrigating purposes at any time of the year on grantor's land, and agreed for himself not to prevent grantees from using all of the waters, excepting the reservations. *Held,* that the grantees were only bound to permit a sufficient amount of water to flow down the creek past their intake for irrigating grantor's land, and were not responsible to grantor or his assigns if it was used by others.

From Jackson: H. K. HANNA, Judge.

ON MOTION TO DISMISS APPEAL.

MR. JUSTICE BURNETT delivered the opinion of the court.

1. At the hearing a motion was presented, on behalf of plaintiffs, without argument, to dismiss the appeal, on the ground that the transcript had not been filed within 30 days after the appeal was perfected. This was predicated upon the assumption that the 30 days began to run five days after service of the undertaking on appeal. This would be true if no exception to the surety on the undertaking had been filed within the five days. The appellant however, having suggested a diminution of the record, the clerk of the circuit court forwarded additional matter that should have been included in the transcript in the first instance, whereby it appears that exception to the surety was filed. By consent of parties, the justification, of which timely notice had been given, was postponed from time to time, and finally was waived by plaintiffs. The 30 days began to run from the day of this waiver, as that was tantamount to a justification, within the meaning of Section 550, subd. 4, L. O. L. During the 30-day period thus computed,

the circuit judge made an order extending the time in which to file the transcript, and it was seasonably filed under the sanction of that order, as contemplated by Section 554, subd. 2, L. O. L.

The motion to dismiss the appeal is overruled.

MOTION TO DISMISS DENIED.

This is a suit in equity by Andrew Cantrall and A. S. Kleinhammer for an injunction against the Sterling Mining Co., a corporation, to prevent an interference with certain water rights acquired by appropriation by plaintiffs' grantors in the water of Little Applegate Creek, in Jackson County, Oregon. From a decree in favor of plaintiffs, defendant appeals.          MODIFIED.

For appellant there was a brief over the names of *Messrs. Smith & Beckwith,* with an oral argument by *Mr. Robert G. Smith.*

For respondents there was a brief with oral arguments by *Mr. Gus Newbury* and *Mr. William I. Vawter.*

MR. JUSTICE BURNETT delivered the opinion of the court.

ON THE MERITS.

The plaintiffs in this suit complain of the defendant for an alleged interference with their water right arising from an alleged appropriation by the plaintiffs' grantors of the water of Little Applegate Creek, amounting to 500 inches, under six-inch pressure, in each of two irrigation ditches which they describe in their complaint.

The plaintiff Cantrall is the owner of certain lands described in the complaint, and the plaintiff Kleinhammer claims an equitable interest in the same property by virtue of a contract for the sale of the same by Cantrall to himself. As there is no dispute about their relations to each other, they will be sometimes mentioned

in the opinion in the singular number for convenience. The plaintiff alleges his entire ownership of what is described as the Lower Phillips ditch, and says that he is the owner of an undivided half interest in the Upper Phillips ditch, of which the defendant is the owner of the other half. The essential allegation of the complaint, as the foundation of the plaintiff's right, is this:

"That plaintiff's grantors, more than 10 years prior to the irrigating season of 1908, appropriated and diverted of the said waters of the said Little Applegate for each of said ditches 500 inches of water, under a six-inch pressure, for irrigating and domestic purposes, and conveyed the same, by means of said ditches, down to and upon the said described premises, where the same have been used by said plaintiffs and their grantors each and every year since the date of appropriation and diversion down to the irrigating season of 1908. * * That plaintiffs and their grantors, for more than 10 years immediately prior to the irrigating season of 1908, have taken, appropriated, and used the said waters for said irrigation and domestic purposes through the said ditches on said first-described premises openly, notoriously, continuously, and adversely to the interests of this defendant and all the world, and for more than said 10 years have been in the open, notorious, continuous, hostile, exclusive, and adverse possession, use, and enjoyment of all of the said waters for the said purposes, as against said defendant and all the world."

It is further stated, in substance, that the defendant owns a ditch taken out of the Little Applegate creek above the point of plaintiff's diversion, through which it uses the water for mining purposes on Sterling creek, and that in the year 1908 the defendant diverted through its ditch, in the irrigating season of said year, such a quantity of water from Little Applegate as to conflict with the irrigating rights of plaintiffs. They further aver that the defendant threatens and intends to continue such diversion, to the irreparable injury of the plaintiffs.

The answer admits the corporate character of the defendant, the title of the lands in plaintiff, as alleged, and the ownership in the plaintiff and defendant each of an undivided half interest in the Upper Phillips ditch, and that the defendant is the owner of the mining ditch taken out of the Little Applegate above plaintiff's point of diversion. The other allegations of the complaint are denied.

For an affirmative defense, the defendant substantially avers a prior appropriation, beginning in 1874, of 3,500 inches of the waters of Little Applegate creek, under six-inch pressure, miners' measurement, for mining, irrigation, and domestic uses and the continuous, open, notorious, and adverse use of the same down to the present time, and that plaintiff's alleged appropriation is subsequent and subordinate to the prior appropriation of the defendant, stated in the answer. The reply traverses the affirmative allegations of the answer.

The court below, after hearing, decreed that the defendant should turn down Little Applegate creek, past the intake of its ditch, each year during the irrigating season 979 inches of water, under six-inch pressure, miners' measurement, for the use of the plaintiffs, and that when the use of the plaintiffs was thus satisfied they should notify the defendant, so that it could then resume its use of the water. The court enjoined disturbance of the plaintiffs' rights thus established, and the defendant appeals.

The plaintiff Cantrall derived his title to the lands described in his complaint from three sources. His holdings consist of the Riley Phillips place, bought in 1881, of the Harwick place, bought in 1885, and the Samuel Phillips place, bought in 1888. Little Applegate creek, in the valley in which the plaintiff's lands are situated, is augmented by Glade fork and Phil Gleave fork and sun-

dry other affluents, all above plaintiff's land. The two ditches mentioned in the complaint were dug somewhere between 1854 and 1858, and were used originally for mining purposes. Afterwards, when he settled upon his place, Samuel Phillips began to use them for irrigating purposes, supplying his own farm and that of Riley Phillips. In October, 1873, the predecessors in interest of the defendant, entered upon the Little Applegate and appropriated 1,000 inches of water, miners' measurement, for their use in mining purposes, and in May, 1877, they appropriated all the water of Glade creek, adding it to that already apportioned from Little Applegate, and putting in works for both their diversions several miles above the head of plaintiff's ditches. The defendant and its grantors conducted the water thus appropriated, amounting in all to some 2,500 inches, miners' measurement, by a ditch leading to the Sterling mines in a sinuous course more than 20 miles in length. On May 29, 1877, Samuel Phillips executed an instrument in terms which follow, in its substantial parts:

"This indenture witnesseth: That whereas, U. S. Hayden, T. Cameron and R. S. Armstrong propose to take 1,800 inches of the waters of Little Applegate creek, of Jackson county, in the state of Oregon, in a water ditch for mining purposes, at a point on said creek above the land now owned or occupied by me: Now, therefore, I, Samuel Phillips, in consideration of one ($1.00) dollar to me paid, the receipt of which I do hereby acknowledge, I do by these presents relinquish to said Hayden, Cameron and Armstrong, their heirs and assigns, any right or privilege I may have to the waters of said Little Applegate creek for the purpose aforesaid, excepting and reserving for myself, my heirs and assigns, so much of the water of said creek as shall be necessary for irrigating purposes at any time of the year on said land now owned or occupied by me. And I promise and agree, for myself and my heirs and assigns, not to prevent or to hinder said Hayden, Cameron and Armstrong, their heirs or

assigns, from taking out or using all of the waters of said creek the waters aforesaid, or claiming any damages therefor, excepting the reservations aforesaid."

On the same day, Riley Phillips executed a writing in identical terms. These two instruments were acknowledged, delivered, and recorded in the deed records of Jackson County, Oregon, and the defendant, by *mesne* conveyances, has succeeded to all the rights of the grantees therein. The irrigable area on the two Phillips places, taken together amounts to 100 acres.

The testimony shows that from time to time during the irrigating season of the succeeding years down to 1908, at the request of the plaintiff and his predecessors in interest, the defendant would turn down Applegate creek, from the head of its ditch, water for the use of the plaintiff in irrigation. After a few days of use, upon notification by the plaintiff, the defendant would again resume use of the water through its ditch. No dispute arose until 1908, when the plaintiff Kleinhammer according to his testimony, sent word by the plaintiff Cantrall to notify the then superintendent of the defendant's mine that he (Kleinhammer) wanted some water, and the answer came back by some of the men to Kleinhammer to this effect: That Heard, the superintendent of the mine, would not turn out the water; that is, if it was demanded. He said "if we just merely wanted water he would turn it down; but, if it was demanded, to demand away till I got tired." There was no other demand, and the plaintiff never had any other conversation with Heard, but without further ado this suit followed. The plaintiffs and the defendant both claim by prior appropriation of the waters of Little Applegate creek. The defendant argues that there is a variance between the pleadings of the plaintiffs and their testimony, for that, while they allege prior appropriation, they seek to prove

their allegation by the reservation made by Phillips in the instrument already quoted. The evidence, however, is abundant otherwise that the two ditches mentioned in the complaint were in use for irrigation purposes long before the appropriation of the waters of Little Applegate creek made by the predecessors of the defendant. We are of the opinion, however, that the instrument quoted operates as a qualification of the rights of the plaintiff, as well as of those claimed by the defendant.

2. When the predecessors of the defendant were about to enter upon their undertaking of appropriating the water of Little Applegate creek and the construction of their ditch for mining purposes, they found Phillips already exercising his rights as an appropriator of the same water. As he had a right to do, Phillips relinquished his rights in the water of Little Applegate creek, with the exceptions noted in the instrument already mentioned. Warned by the records of this instrument, the plaintiff Cantrall took no better title to the Phillips land and its appurtenant water right than Phillips had left after the execution of the relinquishment. On the other hand, the defendant only took title to the waters of the creek as they were affected by this instrument. It is true there appears in evidence a notice, under date of November 25, 1878, signed by Samuel Phillips, in which he claims for each of the two ditches mentioned an appropriation of 200 inches of the waters of the creek in question for mining and irrigating purposes. This, however, was subsequent to the relinquishment signed by Phillips, and subsequent to the appropriations of the defendant. It is manifest that this appropriation of November 25, 1878, can have no effect as against the instrument of relinquishment executed by Phillips himself, or against the prior appropriation of the defendant. While it might serve as color of title to support a claim

based on subsequent adverse user for 10 years, the testimony does not show that either Phillips or the plaintiffs did anything different or contrary to the arrangement entered into at the time of Phillips' relinquishment. This does not amount to adverse user; it only shows performance of that stipulation. The *modus vivendi* thus established was observed scrupulously until the dispute arose in 1908.

3. Before either party or privy to that arrangement can successfully maintain title by adverse user, he must show some affirmative act on his part under claim of right, open, notorious, and exclusive in its character, amounting to such an invasion of the other's title as would furnish a cause of action in favor of the latter. The rule is thus laid down in *Carson* v. *Hayes,* 39 Or. 97 (65 Pac. 814) :

"The law is well established that no right to the use of water can be acquired by prescription, unless there has been such an invasion of the rights of the parties against whom it is asserted as would have given them a cause of action therefor."

This principle is further elaborated in *Ison* v. *Sturgill,* 57 Or. 109 (109 Pac. 579: 110 Pac. 535), and pointed out by analogy in *Talbot* v. *Cook,* 57 Or. 535 (112 Pac. 709). See, also, *North Powder Milling Company* v. *Coughanour,* 34 Or. 9, 22 (54 Pac. 223).

4, 5. Bearing in mind, then, that the reservation of Phillips was "for so much of the water of said creek as shall be necessary for irrigating purposes at any time of the year on the lands now owned and occupied by me," the question resolves itself into this: What is necessary to irrigate 100 acres on the two Phillips places for the purposes disclosed in the pleadings?

"Use of water by any one, in a legal sense, is always qualified by the condition that it must be restricted to such quantity and time of employment only as may be

reasonably necessary for the accomplishment of some useful purpose, either existing at the time or fairly contemplated in the future. Extravagant or wasteful application, even to a useful project, or an employment of water in a nonbeneficial enterprise, is not included in the term 'use,' as contemplated by the law of waters. Then, too, when even an appropriator is not using the water, it is available for the use of others." *Caviness* v. *La Grande Irrigation Company*, 60 Or. 410 (119 Pac. 731), and authorities there cited.

The plaintiffs agree in their testimony that it is not necessary to call upon the defendant to turn down the water at any time prior to July 1st of each year. They produce three crops of alfalfa annually, the irrigation of the first of which is completed before that date, without disturbing the defendant's use of the water. The irrigation season closes with the month of September each year.

The testimony of the plaintiffs indicates that they have been somewhat extravagant in the amount of water they used in irrigation. One witness says it gets wet in the county road where the water runs out after passing over the irrigable land, and the hogs wallow there. Another says that water runs across the road when the plaintiffs irrigate, and that they put in boxes, about two feet wide and one foot high, to act as culverts in conducting the water across the road. All the witnesses speaking on that subject agree that in irrigating alfalfa it is desirable to use a good head of water to flood the land quickly, and as soon as possible to take the water off.

T. W. Osgood, a witness for the plaintiffs, a civil engineer of several years experience in irrigation projects, testifies that on May 16, 1909, he measured the water in the two ditches at what the plaintiff Kleinhammer said was the normal flow. The measurement disclosed that in the Upper Phillips ditch there were 502.32 and in the lower ditch 477.68 miners' inches. He

says that 500 miners' inches, under six-inch pressure, would cover 200 acres of land a foot deep in 24 hours. After various other illustrations of the kind, he testifies that one-inch per acre continuous flow is the average allowance in various projects of irrigation. This amount has been approved in several cases already decided by this court. Putting the amount of irrigable land on the two Phillips places at 100 acres, this ratio would work out 100 miners' inches continuous flow as meeting the necessities for irrigating purposes reserved by the relinquishment of Phillips. Using the full head of water, measured by the use, not only on the Phillips land, but also on the Harwick land, the plaintiff Kleinhammer says he usually finished up his irrigation in eight days. Restricting the use of the water to the 100 acres of Phillips' land at 100 miners' inches continuous flow, as we must under the testimony, and remembering the desirability of covering the alfalfa by quick irrigation, and then suspending it, we think 500 inches, in continuous use a week at a time, would be amply sufficient to answer the necessities of the plaintiffs under the reservation made by Phillips.

6. The principle of alternation in the use of water is recognized in *McCoy* v. *Huntley*, 60 Or. 372 (119 Pac. 481).

7. The duty of the defendant toward the plaintiff, under the Phillips relinquishment, is performed when it allows a sufficient amount of water to flow past its intake down the natural channel of the creek. The defendant is not responsible if, after it has turned the water down, it is taken up by other users before it reaches the plaintiff.

Bearing in mind, then, that it has not been necessary to call on the defendant for water until July 1st of each year, the decree will be modified, so as to require the defendant, on three days notice, in writing, from the

plaintiffs, to allow at least 500 miners' inches of water, measured under six-inch pressure, to flow past the defendant's head gate down the channel of Little Applegate creek at any time during the months of July, August, and September of each year, not exceeding one week at any one time, and not exceeding five weeks in all during those three months, and to enjoin both the plaintiffs and the defendant from otherwise interfering with the use of the water as against each other.

MODIFIED: REHEARING DENIED.