CUNDY, Appellant, v. WEBER, et al, Respondents

(300 N. W. 17.)

(File No. 8390. Opinion filed October 7, 1941.)
Rehearing Denied November 19, 1941.

**Robert C. Hayes** and **Alex Rentto,** both of Deadwood, for Appellant.

**Wm. G. Rice** and **Bernard K. Bettelheim,** both of Deadwood, and **Dan McCutcheon,** of Belle Fourche, for Respondents.

SMITH, J. The complaint of plaintiff alleges the right to divert and use sixty-nine miner's inches of the waters of Higgins' Gulch in Lawrence County for irrigation of his

farm and for other uses, and that the defendants, during the years immediately preceding the commencement of this action, have wrongfully interfered with that right and have diverted all of the flow of that stream. Plaintiff prays for an adjudication of his right and that defendants be permanently enjoined from diverting water in derogation of that right.

The defendants' answer alleges a prior appropriation and right to the use of waters of the creek, ownership of a certain dam located therein and of a ditch extending therefrom across plaintiff's land to their respective farms, and that plaintiff has continuously interfered with their dam and ditch, and denies the alleged right of plaintiff. They pray that plaintiff be restrained from interfering with their water right and instrumentalities.

The learned trial court found for the defendants and against the plaintiff and decreed that plaintiff's complaint be dismissed, that the defendants "are entitled to all of the water of Higgins Gulch that they can divert through their present irrigation system, and * * *, that the plaintiff, Harry Cundy, is entitled to none of the water of Higgins Gulch, save and except such as may pass over the defendants' dam," and enjoined the plaintiff from interfering with the water which the defendants were entitled to divert under the right so awarded, or with their dam or ditches.

Within the limits of plaintiff's assignments of error, we turn to a review of the decision of the trial court insofar as it adjudicates a water right in the defendants.

The answer of the defendants predicates their right upon an appropriation by one Toomey in 1877, and upon a decree entered in November, 1894, in an action in which Ellen Scott, plaintiff's predecessor in interest, was plaintiff, and one Daniel J. Toomey, defendants' predecessor in interest, was defendant. Cf. Scott v. Toomey, 8 S. D. 639, 67 N. W. 838. The trial court determined that plaintiff was bound by that decree and based its determination of the right of defendants thereon.

The force of the decree in Scott v. Toomey, supra, is challenged by the assignments in only two respects. It is

firstly contended that the extent of the water right of Toomey was not in issue or litigated in the former action.

The entire record in that action, including the testimony and exhibits, was introduced in this cause and is before us. We have examined that record and have determined that the water right of Toomey was placed in issue and was actually litigated. From that record it appears that Toomey's answer pleaded his alleged prior right affirmatively and prayed for an adjudication of that right.

■ The contention that the issue was not litigated is based upon the fact that there is little evidence in the record of the extent of the beneficial use to which Toomey applied the water under his notice and acts of appropriation. Whether we deem the evidence sufficient to sustain the findings, conclusions, and judgment there entered is not a matter of present concern, as an estoppel may be predicated upon an erroneous judgment. Based upon evidence of a notice of appropriation, of taking water into possession pursuant to that notice through the construction of a dam and irrigation ditches, and of use thereof, the court found such facts and decreed that "Daniel J. Toomey is as against the plaintiff Ellen Scott, the owner of a certain water right in Higgins Gulch * * * and is entitled to so much of the waters of Higgins Gulch as can be diverted by the west ditch situated on * * * (describing the land of Ellen Scott now owned by plaintiff), and that the said plaintiff Ellen Scott has no right, title or interest in or to said amount of water nor in the right of way for said west ditch across the above described tract of land and she is hereby enjoined from asserting any title in or to said amount of water or right of way for ditch across said described premises or from interfering in any manner with the same."

■ It is secondly contended that this decree is too uncertain and vague to serve as the basis of an estoppel in that it fails to fix the quantity of water awarded for the use of Toomey. Under another phase of this appeal we shall presently treat more fully of the vulnerability of such a decree to direct attack on appeal therefrom. The decree is fairly

open to criticism because it fails to contain such an exact and technical description of the adjudicated water right as to leave no room for difference of opinion or for controversy. We have concluded, however, that the measure adopted by the court is not so utterly uncertain as to warrant a holding that the judgment is a nullity, and that insofar as it adjudicates facts which were placed in issue and actually litigated, it should be accorded controlling force.

■ The salutary doctrine of estoppel by judgment has so established the adjudications of the courts in the confidence of mankind as to result in their universal recognition and acceptance as the highest order of indisputable evidence of rights. Such a judgment as is here under consideration which has stood as an unquestioned record of the priority and extent of a valuable property right in the use of water, and upon which successive grantees have depended as a record of title, should not be nullified except for the most cogent and impelling reasons.

■ A concise statement of the controlling rule appears in 34 C. J. 902: "A judgment rendered by a court having jurisdiction of the parties and subject matter, whether correct or not, is conclusive and indisputable evidence as to all rights, questions, or facts put in issue in the suit and actually adjudicated therein, when the same come again into controversy between the same parties or their privies in proceedings upon the same or a different cause of action." Cf. Keith v. Willers Truck Service et al., 64 S. D. 274, 266 N. W. 256, 104 A.L.R. 1471.

■ As we have pointed out, the issues framed by the parties to the former suit embraced the water right of Toomey and that issue was litigated therein. The learned judge who tried that issue regarded the capacity of the ditch by which Toomey captured or took possession of the waters of the creek as the ultimate measure of his water right. That the theory thus adopted was erroneous (Cf. Stenger v. Tharp et al., 17 S. D. 13, 94 N. W. 402, and also Wiel, Water Rights in the Western States, 3d Ed., §§ 139 and 476), is not significant. In pursuing and applying the adopted theory of

222

law it became necessary for the court to determine the fact we now have under consideration, viz., that Toomey was entitled to divert waters of the stream in an amount equal to the maximum capacity of his ditch. That fact was determined and adjudicated. The findings identify the particular ditch denominated by the court as the "west ditch." Its maximum capacity under the most favorable stream conditions represented a determinable volume of water. The parties litigant acquiesced in the theory of the court. Because the volume of that capacity expressed in standard units of measurement was not adjudicated, we may not close our eyes to the fact that this particular matter we have pointed out was determined and adjudicated. In our judgment, all of the considerations which have influenced the courts in adopting and applying the doctrine of res judicata for the purpose of prohibiting the relitigation of a question once adjudicated impel the conclusion that this fact should be held to be indisputably established by the decree. We discern no controlling difference between the unconditional adjudication of this matter and the adjudication that Toomey's appropriation was prior in time to the right of Ellen Scott, and the further fact that she was estopped to question Toomey's right of way across her lands, both of which additional matters were settled by the decree. That the then maximum capacity of the west ditch remained unlitigated and undetermined is manifest. However, from evidence the sufficiency of which is not here questioned, the court determined that the capacity of defendants' "present irrigation system" is no greater than that of the Toomey "west ditch."

It is next said that in construing the questioned former decree the doctrine of beneficial use should be so read into its terms as to limit the extent of the water right awarded to such a beneficial use as Toomey made of the waters within a reasonable time after his notice of appropriation.

The function of the process of construction is to determine the intention and meaning of the author of a judgment or other instrument. Viewed prospectively, a water right evidenced by decree of court is subject to aspects of

the doctrine of beneficial use. To apply that doctrine in the suggested manner to a decree which rests upon the theory that an appropriation is consummated by taking possession of the waters of a stream and is measured in extent by the capacity of the ditch as contradistinguished from the true theory that an appropriation is consummated by the application of the captured water to a beneficial use, and the ultimate measure thereof is the extent to which the water is needfully and beneficially used within a reasonable time after initiating the appropriative procedure, would obviously be to attempt to purge the decree of error by ingenious construction rather than to seek the intention and meaning of the court. In unequivocal and unconditional terms the decree measures a water right by the capacity of the "west ditch" and restrains the defendant Scott from interfering with that amount of water. A different construction is not warranted.

It is said that the findings, conclusions and judgment entered in the case at bar fail to so definitely and accurately describe the rights adjudged the defendants as to safeguard the rights of plaintiff or of the public.

■ The public interest in the most complete and efficient use of such waters was adverted to in Cook et al. v. Evans et al., 45 S. D. 31, 185 N. W. 262. An equally important public interest requires that the adjudications of the courts shall so completely and precisely compose the controversy at hand as to dispel and allay misunderstanding, discourage litigation, and invite repose. The decree evidently was modeled after the judgment entered in Scott v. Toomey, supra. The present litigation furnishes proof positive that loose language such as was there employed but breeds litigation and settles little or nothing.

■■ The plaintiff alleged and prayed for adjudication of rights as a subsequent user of water. The court failed to adjudicate a specific right in plaintiff, but it explicitly recognized his right to use water from the stream after it passed the dam of defendants. Whatever right plaintiff has in the use of those waters begins at the limits of the reasonable exercise of the rights of defendants. When

viewed from that aspect the necessity for sharp definition of the prior right becomes obvious. Knowledge of the exact limits of the rights of defendants is essential to a proper safeguard against unreasonable use or waste, and to a discernment of the reduction in the extent of the prior right through implied abandonment or statutory forfeiture. Within the limits of the evidence the subsequent user is entitled to a definition of the prior right in terms that are not only accurate but which are concise and susceptible of ready relation to use and continuity of the right to use. Plaintiff has asserted that right by proper objections and assignments. The record is sufficient to permit a finding and judgment which measure defendants' rights in standard units. As against such a direct attack the decree is not sufficiently certain to safeguard the interests of plaintiff or the public. We concur in the view expressed by Mr. Kinney in his admirable work Irrigation and Water Rights, 2d Ed., at § 1558, in writing with reference to a decree awarding the use of a quantity of water under a right of appropriation. He writes: "And in this respect the decree should be made as definite and certain as the use of language can make it."

Insofar as the statements made in Driskill et al. v. Rebbe et al., 22 S. D. 242, 117 N. W. 135, are in conflict with the views here expressed, they are expressly overruled.

██ ██ We deal briefly with the rights of plaintiff in the use of the waters of the creek. The complaint alleges a right under appropriations by plaintiff's predecessor in interest and prays for an adjudication of the plaintiff's rights in the use of the water of the stream. The evidence establishes that such a right was actually effectuated by plaintiff's predecessors through statutory procedure and by application of the waters to a beneficial use. The extent of the use to which the water was so applied is in dispute. This dispute was not resolved by the findings and, as we have indicated, no right was awarded plaintiff by the judgment of the court. Defendants seek to support the judgment by asserting that any right so acquired was abandoned. The defense of abandonment was neither pleaded by the defendants nor litigated. Abandonment of such a property right must be

specially pleaded. 1 C. J. S., Abandonment, § 6, p. 14. Under the present record, plaintiff was entitled to a finding measuring the extent of the beneficial use to which the water was applied under appropriation made by his predecessor in interest and an adjudication of a corresponding water right.

Conflicting testimony appears in the record on two additional fact issues. The trial court failed to find the ultimate facts upon which a legal conclusion may rest, and although we are assailed by doubt as to the sufficiency of the record to present such failure for review (Cf. Lounsberry et al. v. Kelly, 32 S. D. 160, 142 N. W. 180), because the judgment must be reversed, and these issues will be involved in a re-trial, we have determined to set forth our views on the governing principles.

The court permitted the plaintiff to file a reply in which he alleged that defendant Weber and his predecessors in interest had abandoned a portion of their right in the waters in question, and the issue so pleaded was tried. It is the theory of plaintiff that the full measure of the right of Weber has never been exercised by the application of the described quantity of water to a beneficial use, and that an intention to proportionately abandon the right to use the waters of the creek should be implied. Quite obviously, findings as to the capacity of the Toomey west ditch, as to the quantity of water needful during an ordinary year (Cf. Cook v. Evans, supra), in the beneficial use to which Weber and his predecessors in interest employed that water, and as to the water so actually applied during the years in question, are essential to a determination of this issue.

Abandonment of a property right results from a concurrence of an intention to surrender, and the actual relinquishment thereof. Conduct may support an inference of such an intention. While abandonment of a valuable water right should not be lightly implied, public interests require that this natural resource be applied to a beneficial use by the holder of such a right, or that it be rendered available for appropriation and use by others. A prima facie showing of an intention to abandon the right to use

a particular quantity of water may be made by evidence of the failure to apply such water to a beneficial use for an unreasonable period of time. Kinney, supra, § 1104. In our opinion, if, as contended by plaintiff, some measure of the water right of defendant Weber has never been applied to a beneficial use during the period of years intervening since 1894, the evidence in the record required an adjudication of a proportionate implied abandonment of the right of that defendant.

 In his reply brief, in dealing with the issue of abandonment, plaintiff asserts a forfeiture of a portion of the water right in question under SDC 61.0139 (Cf. St. Germain Irrigating Ditch Co. v. Hawthorne Ditch Co. et al., 32 S. D. 260, 143 N. W. 124), for failure to apply such water to a beneficial use during the statutory period of three years. This theory was not presented to the trial court and may not be raised here. Needham v. Jameson, 66 S.D. 131, 279 N.W. 536. We need not now determine whether forfeiture under the statute may be evidenced under an allegation of abandonment.

 The plaintiff complains because the court refused to require rotation of the flow of Higgins' Gulch between the parties litigant. The power of the court in an action involving successive water rights to require rotation is settled by Cook v. Evans, supra. And see Hufford v. Dye, 162 Cal. 147, 121 P. 400; Cantrall et al. v. Sterling Mining Co., 61 Or. 516, 122 P. 42.

The doctrine rests upon the theory that the use in which the holder of a paramount right is entitled to protection is limited by the amount of water needful in the particular undertaking in which he is employing the flow, and that he may not complain of a reasonable regulation which completely and fully satisfies his needs through the application of an increased volume of water during shorter periods of time.

 A paramount user is entitled to such a quantity of water, within the limits of his appropriation thereof, as will satisfy his needs as they are defined by Cook v. Evans

supra, even though the entire flow of the stream is thus exhausted, and no regulation is warranted which invades that right.

 Under circumstances indicating that a more efficient use of the waters of a stream may be made between the holders of successive rights therein by a system of alternating use, determination of the problem presented to the trial court, and in the last analysis to a reviewing court in concluding whether rotation may be safely imposed, turns on whether superior rights may be properly safe-guarded. Until the total quantity of water available and the needs of the holders of the superior right have been definitely determined, a considered judgment may be neither formed nor reviewed. Present review on the merits is thwarted because the evidence is conflicting and the practical factors involved in the problem have not been found by the trial court.

 In 1898 defendant Weber's predecessor in interest, Daniel J. Toomey, transferred an undivided one-fourth interest in his water right and ditch to defendant Thompson. Plaintiff contends with considerable earnestness that this instrument of conveyance must be interpreted as a grant of the right to use a specific number of miner's inches of water, and he then argues that as the number of miner's inches of water so transferred exceeded the water right then held by Toomey, "he was left with a dry ranch" and that his subsequent conveyance to Weber carried with it no right in the use of the waters of Higgins' Gulch. We do not share plaintiff's view. The described conveyance by its plain terms evidences an intention to transfer no more than an undivided interest in whatever water right Toomey then owned. An undivided interest in that right and in the described ditch remained in Toomey and passed by his subsequent conveyance to Weber.

Other matters assigned and discussed are either deemed to be controlled by findings based on conflicting evidence, or are untenable.

The judgment and order are reversed.

All the Judges concur.