HENDERSON, Appellant, v. GOFORTH et al., Respondents.

(148 N. W. 1045.)

**1. Waters and Water Courses—Location Claim—Limit of Claim, to Use.**

 The specification in a water right location claim, of a larger amount of water than was actually used, does not give claimant the right to the excess of water so claimed.

**2. Same—Relative Prescriptive Water Rights by User—Burden of Proof—Findings, Legality of Conclusions on**

 Where plaintiff, for over twenty years, had actually and continuously diverted, used and appropriated a certain amount of water, other claimants, taking water from the same stream by the same means and for a similar period, have the burden of showing a prescriptive right superior to plaintiff's rights. **Held,** further, that findings showing that the respective parties

had, for more than twenty years, actually diverted and used the full quantity of water to which the trial court held them, respectively, entitled by virtue thereof, but that not until afterwards did such use by defendants deprive plaintiff of his full flow, do not warrant a conclusion of law that such appropriation and beneficial use by defendants constituted such an adverse use, or claim of right to adverse use, as could initiate a prescriptive right in them, as against plaintiff.

3. **Same—Use of Water, When Not Adverse—Necessity of Invasion of Other's Right.**

Where defendants' use of water for irrigation did not deprive plaintiff of his use, from the same stream, of all water to which he was entitled under his user, for the same period, **held**, defendants could acquire no prescriptive right as against plaintiff.

4. **Same—Riparian Rights—Prior Settlement, Effect of.**

The relative rights of settlers upon the public domain, as riparian owners, are determined according to the priority of their respective settlements. **Dictum.**

5. **Same—Riparian Lands—User—Equal Acreage, Conclusiveness of Relative Rights—Conclusion of Law.**

The fact that lands of water claimants were all riparian to one stream, and that the acreage of each, irrigated by the water, was substantially equal, does not warrant the conclusion of law that the riparian rights of each are equal.

McCoy, J., dissenting.

(Opinion filed October 6, 1914.)

Appeal from Circuit Court, Lawrence County. Hon. WILLIAM G. RICE, Judge.

Action by James Henderson, sometimes known as James Cushing, against Robert W. Goforth and others, to quiet title in plaintiff, to water rights, as against defendants. From a judgment in favor of defendants, and from an order denying a new trial, plaintiff appeals. Reversed and remanded.

*Kellar & Stanley,* for Appellant.

*Stewart & Hodgson,* for Respondents.

(2) Under point two of the opinion, Respondents cited:

Wutchumna Water Co. v. Ragle (Cal.) 84 Pac. 162-166.

(3) Under point three of the opinion, Appellant cited:

Jones v. Redwater Co., 130 N. W. 91 (S. D.); Egan v. Estrada, 56 Pac. 721 (Ariz.); Smith v. Duff, 102 Pac. 981 (Mont.); Faulkner v. Rondoni, 37 Pac. 883 (Cal.); Ison v. Sturgill, 109 Pac. 579 (Ore.); Clark v. Ashley, 82 Pac. 588 (Colo.);

Talbot v. Butte Co., 73 Pac. 1111 (Mont.); Anaheim Co. v. Seim Tropic Co., 64 Cal. 185; Long, Sec. 90, p. 160; Wiel, Sec. 588-587; Farnam, Secs. 2105-6; Kinney, Secs. 290-256, 294.

Respondents cited:

Humphreys v. Blasingame, 104 Cal. 40, 44, 37 Pac. 804; Gardner v. Wright (Ore.) 91 Pac. 293-294; Gurnsey v. Antelope Co., 92 Pac. 327; Silva v. Hawn, 102 Pac. 955; Moore v. Clear Lake Water Works, 8 Pac. 816; Davis v. Chamberlain, 98 Pac. 157; Alta Land & Water Co. v. Hancock, 24 Pac. 645.

(4) Under point four of the opinion, Respondents cited:

Lone Tree Co. v. Cyclone Co., 15 S. D. 522; S. C. on Re-hearing, 128 N. W. 597; Redwater Co. v. Jones (S. D.) 130 N. W. 90; Redwater Co. v. Reed, 26 S. D. 466, 128 N. W. 712.

SMITH, P. J.   Plaintiff, Henderson, also known as Cushing, and the defendants, Goforth, Nelson, Arnott, and Westgate, are owners of riparian lands along a stream known as False Bottom creek, in Lawrence county.  The lands of the respective defendants and the plaintiff are situated upon said stream in the following order, commencing with the land farthest up stream: The defendants, Goforth, Nelson, Arnott, Westgate; plaintiff, Henderson. All of said lands were settled upon and occupied as lands belonging to the public domain, and title thereto acquired by the parties or their grantors through patent from the federal government. The legal rights of parties, plaintiff and defendants, as present owners, are such as were acquired by their own acts, or those of their grantors, from the time of original settlement on these lands as government lands, and for convenience and brevity, in considering their respective rights, each of the parties to this action, plaintiff and defendants, will be spoken of and considered as having made the original settlements and as having performed the acts done, either by themselves or their grantors.

The plaintiff, Henderson, settled on the lands owned by him on September 15, 1877, and has been continuously in possession since that time.  On January 1, 1878, he made a valid water right location at a point on False Bottom creek convenient for irrigation of his said lands, claiming 1,000 miner's inches of said stream, and thereupon constructed a ditch and diverted the waters upon his land in the spring of 1878, irrigating about eight acres that spring, and within a reasonable time thereafter diverted and appropriated

sufficient of the waters of said stream to irrigate 50 acres, and thereafter, down to the time of the trial, has continued to divert and appropriate water to irrigate 50 acres of his lands.

On June 15, 1877, the defendant Irving Westgate settled on the lands claimed by him, and in 1879 located a valid water right on said stream and constructed a ditch, by means of which he diverted waters upon his own land, from July, 1881, down to the time of the trial. On the 18th day of April, 1878, the defendant Arnott settled on the lands claimed by him, and in 1879 located a valid water right on said stream, and constructed a ditch to divert water upon his land, and since July, 1881, down to the time of the trial, has diverted and used the waters of said creek. The defendant Nelson settled on the lands owned by him in 1879, and in 1887 constructed a ditch for the purpose of irrigating his lands, and has irrigated the same from 1887 down to the beginning of this action. Nelson made no water right location, and his rights are those of a riparian owner and none other. The defendant Goforth in March, 1877, settled upon the lands claimed by him, and ever since has been in possession and became the owner by United States patent issued in June, 1884. In 1887 Goforth constructed a ditch for the purpose of irrigating his lands, by means of which he diverted a portion of the waters of said stream, and used the same for irrigation from that time to the beginning of this action. He also constructed the ditch and diverted the waters of said stream without a water right location, and his rights are those of a riparian owner and none other. Plaintiff Henderson for more than 20 years irrigated 50 acres of his land; defendant Westgate has irrigated 20 acres; defendant Arnott 18 acres; defendant Nelson 14 acres; and defendant Goforth 15 acres—each having used said water for a period of more than 20 years.

The trial court found the plaintiff Henderson to be the owner of a valid water right located January 1, 1878, to the extent of 50 miner's inches of water, but found that his rights were junior and inferior to prescriptive rights acquired by the several defendants. The court also made a conclusion of law that the rights of the defendants to the use of the waters of said stream for irrigation purposes, as riparian owners, are equal, and that the rights of plaintiff Henderson, as riparian owner, are subject to the prescriptive rights of the defendants, and each of them, to the extent of the waters

used by each for irrigation purposes. The trial court by its decree and judgment also adjudicated the respective priorities and rights of the defendants between themselves, but, as none of the defendants have appealed, these rights are not before us for consideration. The only question upon this appeal relates to the rights of plaintiff and appellant Henderson as against the prescriptive rights of the defendants.

In effect, the decision of the trial court holds that the rights of plaintiff and appellant Henderson, both as riparian owner and as locator of the water right of January 1, 1878, have been lost to the extent of, and are barred by the prescriptive rights of defendants to, the amount of water used and appropriated by each, respectively, on the theory that the appropriation by defendants was at all time open, notorious, continuous, and adverse to plaintiff's rights, and extended over a period of more than 20 years. Taken as a whole, the record presents a somewhat peculiar state of facts. The trial court found the normal flow of water in False Bottom creek to be approximately 100 miner's inches, and that each miner's inch of water was sufficient to irrigate one acre of land. The court also found as a fact that the plaintiff, for more than 20 years, had actually used and appropriated 50 miner's inches; the defendant Westgate 20 miner's inches; defendant Arnott 18 miner's inches; the defendant Nelson 14 miner's inches; the defendant Goforth 15 miner's inches—the total aggregating 117 miner's inches, in all 17 inches more than the normal flow of the stream. It must be conceded that 50 inches of the water of said stream reached and was appropriated upon plaintiff's land. The discrepancy of 17 inches above the normal flow of the stream is accounted for by a finding of the trial court that a surplus portion of the waters diverted by the defendants or some of them was returned to the stream at some point above plaintiff's lands. Just in what way defendants or any of them acquired a prescriptive right to this 17 inches of water actually returned to the stream and used by plaintiff is not apparent, and yet the trial court appears to have held that the right of defendants, or some of them, to this water was superior to the right of plaintiff, who in fact at all times received and appropriated it to his own use, as the lower proprietor on the stream.

[1] The notice of plaintiff's water right location claims 1,000 miner's inches of water, but the extent of his claim becomes immaterial for the reason that he could acquire no legal right to a greater quantity of water than the 50 miner's inches actually appropriated by him to a beneficial use, and, so far as his rights are concerned, any other riparian owner, or locator of a water right, could legally claim any surplus in the stream above the 50 inches actually used. It is conceded that plaintiff possessed rights both as a riparian owner and as locator of a valid water right; but inasmuch as he has founded his action upon his right as a locator of a water right, and not as riparian owner, we deem it unnecessary to consider his riparian rights. It is apparent that the trial court did not attempt to adjudicate the rights of plaintiff as locator of a water right, as against the water right locations of two of the defendants, or as to the riparian rights of the other two who made no water right locations. The relative rights of plaintiff and the defendants, as riparian owners or locators of water rights, were not determined or adjudicated by the trial court, and no such rights are before us for review upon this appeal.

The single specific question presented is whether, upon the facts disclosed by the record, the trial court was correct in holding that the defendants, by continuous adverse use of the waters of False Bottom creek for more than 20 years, have acquired prescriptive rights which are superior to and must be held to defeat plaintiff's rights, under his water right location. We are not called upon, therefore, to determine the effect of the proviso in the Federal Desert Land Act of March 3, 1877, or to consider the decisions of the courts construing the same. Under the decision of the trial court, the location rights and the riparian rights of defendants are material only in that they were held to have initiated the adverse claims and alleged prescriptive rights of the defendants.

Plaintiff's action was to quiet title to his water right as against the defendants. The complaint sets up his water right location on January 2, 1878, the construction of ditches, and the appropriation of 90 miner's inches of water and the irrigation of 90 acres of his lands. The defendants, by their several answers, allege ownership of their respective tracts of land, their respective rights as riparian owners and locators of water rights, and their adverse use and

appropriation of the .waters of the stream for a period of more than 20 years, and pray that their rights be decreed to be superior to those of the plaintiff, and that he be permanently enjoined and restrained from interfering with their use and enjoyment of said waters.

[2] The trial court sustained the plaintiff's rights to the extent of 50 miner's inches of water ,and found, as a fact, that plaintiff had actually diverted and appropriated said waters to a beneficial use for more than 20 years prior to the commencement of the action. When the facts sustaining these findings were made to appear, the burden of proof was shifted upon defendants to establish a prescriptive right superior to plaintiff's rights as locator. The findings of fact show that, for more than 20 years, plaintiff and the defendants have each actually diverted and used the full quantity of water to which, the court finds, each party was entitled by reason of actual diversion and beneficial use, and conclusively show that, until the summer of 1911, the diversion and use of waters of the stream by the defendants had never deprived the plaintiff of his full flow of 50 miner's inches. As a conclusion of law, the trial court found that the diversion and use of water was a continuous, open, peaceable, notorious, exclusive, uninterrupted use of the waters of said creek, by said defendants, under color of title, and constituted an invasion of the rights of plaintiff, for a period of more than 20 years, and that the water right of the plaintiff to 50 miner's inches of water was junior and inferior to the prescriptive rights of the defendants and each of them. These findings of fact and conclusions of law present the single question decisive of this appeal, and that is whether the use of waters by the defendants, in the manner and for the period and under the circumstances shown by the findings, is such, in law, as to constitute an adverse use, or claim of right to adverse use, such as could initiate a prescriptive right in the defendants. We think the trial court erred in holding the affirmative. It will be borne in mind that the trial court did not decide or hold that priority of right in the defendants was founded on their riparian rights, nor on prior water right locations, but held that such priority of rights was founded solely upon adverse user. It follows that, for the purposes of this appeal, the rights of plaintiff must be considered

as arising from a prior water right location and beneficial use of water.

[3] This case presents the precise question which was considered and determined by the Supreme Court of Oregon in Ison v. Sturgill, 57 Or. 109, 109 Pac. 579, 110 Pac. 535, in which that court said:

"To constitute title to a part of the water from the same stream, something more must be shown than a continuous use of the water by the adverse claimant, as contended by defendants. Such use must be an invasion of the other's use, and thus give the owner of the prior right a cause of action against such diversion. The fact that many appropriators may use part of the water without invading each other's right distinguishes the use of water from a stream, under such circumstances, from cases of adverse occupation of real estate, or even the diversion of water as against a riparian owner, in both of which cases the occupation or use is an infringement of the rights of the true owner, for which an action will lie. * * * But more must be shown in the case of adverse title to water as against a prior appropriator from the same stream, as the latter has no remedy or cause to complain until his use is infringed. One is not called upon to defend or assert his title until his rights are invaded * * * that is, it must be adverse, hostile to the title of the owner; and the burden is on the adverse claimant to show that it was hostile and asserted in such a way that the owner may know of the claim."

The record in this case nowhere discloses that plaintiff ever had reason to suppose that the defendants or either of them ever entertained the slightest thought of making adverse claim to any part of the 50 miner's inches of water which he actually diverted and used for more than 20 years, nor is there anything in the findings showing that the defendants, or either if them, ever did in fact make such adverse claim. The Supreme Court of Oregon, in the Ison Case, quoting from Britt v. Reed, 42 Or. 76, 70 Pac. 1029, said:

" 'Nor is defendant's claim to the use of the water by adverse possession supported by the record, as there is no testimony showing or tending to show that the use thereof by him in any way injured or deprived the plaintiffs of any substantial right until

1899'—thus placing the burden upon the adverse claimant of showing an invasion of the owner's use."

Quoting from Bowman v. Bowman, 35 Or. 279, 57 Pac. 546, that court also said:

"No adverse user (of water) can be initiated until the persons possessing the superior use are deprived of its benefit in such a substantial manner as to notify them that their rights are being invaded."

As removing any doubt of the application of these principles to the case at bar, it may be noted that there is no finding that the water in False Bottom creek was ever at any time, within 20 years preceding the commencement of the action, insufficient to supply each of the parties all the water to which he was entitled, through beneficial use, while, on the contrary, there is an express finding that all parties, both plaintiff and defendants, have had all the water which each is claiming for more than 20 years prior to the summer of 1911, when the water in the stream for the first time became insufficient to supply all parties, and the claims of the defendants first became adverse to plaintiff's rights.

In the case of Egan v. Estrada, 6 Ariz. 248, 56 Pac. 721, the Supreme Court held, as stated in the syllabus, that:

"When there is sufficient water in the river to supply all parties, there can be no such thing as adverse use of the water to start the statute of limitations running. Each is entitled to the use, and it is only when the water becomes so scarce that all of the parties cannot be supplied and that one appropriator takes water which by priority belongs to another appropriator, that there is an adverse use."

This court in the case of Redwater Land & Canal Co. v. Jones, 27 S. D. 194, 130 N. W. 85, recognized the same rule when it said:

"The trial court found that said claim was never made adversely as against the defendant until the year 1901, in which year, for the first time, the said plaintiff diverted all of the waters of the said Redwater river. The court further found, in substance, that until the year 1901 there had always been sufficient water in the Redwater river to supply the wants of defendant as riparian owner. Defendant could claim no more than this, and could not

complain unless deprived of it. The evidence conclusively shows that plaintiff in the year 1901, for the first time, made adverse claim to appropriate all the waters of Redwater river as against the riparian rights of the defendant. Plaintiff's use and appropriation of 4,000 inches of water from this stream for 20 years, without detriment to respondent's riparian rights, did not constitute an adverse user or appropriation."

In Egan v. Estrada, 6 Ariz. 253, 56 Pac. 722, supra, the reason for the rule is well stated:

"When there is a sufficiency of water in the river, the prior appropriator is not entitled to the water used by the subsequent appropriator, and the subsequent appropriator can use under his appropriation without being an adverse user."

In discussing the adverse use of water, the Supreme Court of Montana in Bullerdick v. Hermsmeyer, 32 Mont. 541, 81 Pac. 334, said:

"In no case does such use become adverse until some superior right is infringed and the owner of it suffers deprivation. If it becomes and continues adverse and exclusive for the full period prescribed by the statute, and the owner suffers the consequent deprivation, such use ripens into a right by prescription."

The same rule is recognized in Talbott v. Butte City Water Co., 29 Mont. 17, 73 Pac. 1111; Anaheim Water Co. v. Semi-Tropic Water Co., 64 Cal. 185, 30 Pac. 623. In Bossard v. Morgan, 7 Idaho, 215, 61 Pac. 1031, the court says:

"The findings established that, during the time that defendant was appropriating, diverting, and using the waters claimed by him, the plaintiffs were appropriating, diverting, and using for beneficial purposes (not wasting) the waters claimed by them, respectively. Hence there was no adverse user of the waters claimed by the plaintiffs by the defendant. As against the plaintiffs, the use of waters from Stockton creek lacked every essential element of adverse use and possession. There was no deprivation of possession or use as against plaintiffs, and no claim of adverse title asserted against them by defendant. Without these essentials, there was and could be no adverse possession or user of the water claimed by the plaintiffs on the part of the defendant. Hence his plea of the statute of limitations must fail."

See Faulkner v. Rondoni, 104 Cal. 140, 37 Pac. 883; Smith v. Duff et al., 39 Mont. 374, 102 Pac. 981, 133 Am. St. Rep. 582. We believe the views expressed in these cases are sustained by at least a great majority of courts and are recognized by text-writers generally. Wiel, Water Rights in Western States (3d Ed.) §§ 588, 589; 40 Cyc. 699 (VI); Cantrall v. Sterling Mining Co., 61 Or. 516, 122 Pac. 42; Kimberly-Clark Co. v. Patten Paper Co., 153 Wis. 69, 140 N. W. 1066-1071.

[4] In the case at bar the trial court found as an ultimate inference of fact that the use by defendants of the waters of False Bottom creek, under the conditions and circumstances found by the court, was hostile and adverse to the rights of plaintiff, and that such use for more than 20 years vested a prescriptive title in the defendants. We are clearly of opinion that the conclusion and judgment are erroneous and must be reversed. The final relative rights of the parties as locaters of water rights and as riparian owners were not ascertained or determined by the trial court, and are not before us for consideration upon this appeal. The record discloses that the plaintiff Henderson settled on the lands owned by him September 15, 1877, and on January 1, 1878, made his water right location; that the defendant Westgate settled on the lands claimed by him on June 15, 1877; that the defendant Goforth settled upon lands claimed by him in March, 1877; that defendant Nelson settled on the lands owned by him in 1879; and Arnott settled on the lands owned by him in April, 1878. The settlements of Goforth and Westgate were thus prior in point of time to both the settlement and water right location of Henderson, while the settlements of defendants Arnott and Nelson were subsequent to the location of Henderson's water right. It follows that the rights of Goforth and Westgate, as riparian owners, are superior to Henderson's rights, under his water location, while the rights of Arnott and Nelson are junior to those of Henderson. Attention is directed to these facts, not because the rights referred to are involved on this appeal, but because the foregoing decision wholly eliminates the question of prescriptive rights, and the final determination and settlement of the rights of the parties must rest upon the water location right of plaintiff, as affected by the dates of settlement of the respective defendants. Sturr v. Beck, 133 U. S. 541, 10 Sup. Ct. 350, 33 L. Ed. 761.

[5] Because in the findings of fact, it was found that the
lands of each of the five water claimants were all riparian to False
Bottom creek, and because the acreage of each of such claimants
is substantially equal, and because from such findings the learned
trial court concluded, as a matter of law, that the riparian rights
of each claimant were equal, it is urged that the judgment should
be affirmed as to the defendants Westgate and Goforth, upon the
theory that, by such riparian rights, those defendants were each
entitled to the use of one-fifth of the water (normally 20 inches)
for irrigating their lands, and that such rights were prior to plain-
tiff's location rights. We think that the learned trial court was in
error in concluding that, by reason of such findings, the riparian
rights of the parties are equal.

In Kinney on Irrigation and Water Rights, § 463, the author
says:

"Without here going into the question of the rights which may
be acquired to the exclusive use of the water under the Arid
Region doctrine of appropriation, regardless of the locality or the
place of use, in reference to the natural stream, the rule of 'rea-
sonable use,' which absolutely governs those rights to water
founded wholly upon the common-law doctrine of riparian rights,
does not permit one riparian proprietor to irrigate or otherwise use
the water from the natural stream, where the equal or correlative
rights of other riparian proprietors upon the same stream are in-
jured or infringed upon thereby. The place where the water may
be used is restricted only by the duty to refrain from injuring
others, and the limit of the right is at the point where it infringes
upon the rights of others."

See, also, Redwater Land & Canal Co. v. Reed, 26 S. D. 466,
128 N. W. 702.

Under this rule, any one of the parties might be entitled, as
a riparian owner, to more or less than one-fifth of the water. The
fact of equal acreage does not raise a presumption that the riparian
rights are equal. There are no facts found which sustain the con-
clusion of the trial court. We think that we would not be justified
in affirming the judgment as to the defendants Westgate and
Goforth, based upon their riparian rights without a specific finding
as to what would be a reasonable riparian use of the waters for

irrigating the lands of such defendants, commensurate with, and which would not infringe upon, the rights of other claimants.

It follows that a new trial must be ordered.

McCOY, J., dissents.