COOK, et al., Appellants, v. EVANS, et al., Respondents.

COOK, et al., Respondents, v. EVANS, et al., (Owen, Appellant.)

COOK, et al., Respondents, v. EVANS, et al.,
(Matthews, Appellant.)

(Three Cases.)

(185 N. W. 262.)

(File Nos. 4533, 4534, 4535.  Opinion filed November 10, 1921.)

**1. Waters—Indian Lands, Opened to Homestead Settlers, Riparian Rights On, Homestead Entry as Condition Precedent**

In order for a settler on public lands to acquire a riparian right in connection therewith, on land formerly an Indian Reservation, he must, as a condition to such right, have made homestead entry thereon under the federal law; since no such right could be acquired on Indian lands.

**2. Public Waters—Riparian Rights In, Under Federal "Desert Land Act" Whether Prior Judicial Decisions Have Settled Question— Stare Decisis, Rule of Property Under, Rule Re Identical Question.**

This Court has never determined the effect of the Act of Cong. of March 3, 1877, (Ch. 107, 19 Stat., L. 377) known as the "Desert Land Act," which provides among other things that "all surplus water over and above actual appropriation and use, together with the water of all lakes, rivers and other sources of water supply upon the public lands and not navigable shall remain and be held free for the appropriation and use of the public for irrigation, mining and manufacturing purposes, subject to existing rights," as regards the acquisition of future riparian rights; the rule of stare decisis being that no decision can become binding thereunder and thus be claimed to have established a rule of property, unless there was before the Court when it made such decision the identical question before the Court when such rule is relied on.  Henderson v. Goforth, 34 S. D. 441, referred to as not having settled said question.

**3. Riparian Rights—Rights on Public Lands, Under Federal "Desert Land Act," As Restricting Right to Waters for Domestic Purposes—Waters, Whether Thus Dedicated Subject to Appropriation—Acts Construed, Re Waters Subject to Appropriation, For What Purposes.**

Act of Cong. of March 3, 1877 (Ch. 107, 19 Stat., L. 377), known as the "Federal Desert Land Act," providing in part that all surplus water over and above actual appropriation and use, together with the water of all lakes, rivers and other sources of water supply upon the public lands and not navigable, shall remain and be held free for the appropriation and

use of the public for irrigation, mining and manufacturing purposes, subject to existing rights, when read in connection with Act of Cong. of July 26, 1866 (U. S. Rev. Stat. 2339), relating to supply of public lands with needed water, and concerning waiver of riparian rights, and with Sec. 255, Civil Code, of Rev. Code of 1877, providing that "The owner of the land owns water standing thereon, or flowing over or under its surface, but not forming a definite stream, water running in a definite stream, formed by nature over or under the surface, may be used by him as long as it remains there; but he may not prevent the natural flow of the stream or or the natural spring from which it commences its definite course, nor pursue nor pollute the same,"—in effect severed from all public lands not then lawfully entered upon, all rights to use of waters adjacent thereto except the riparian right to use such waters for domestic purposes; and the Government, by said Act, dedicated to the public and thus rendered subject to appropriation in accordance with existing or state laws and custom, for irrigation, mining, manufacturing and other purposes, all remaining public waters. Hough v. Porter, 98 Pac 1083, followed.

4. Same—Riparian Owner, Additional Rights by Previous User, Prescription as Basis of User Rights, Inferior to Appropriation Right—User Right as Inferior—Priority as Between Additional Rights Re User.

A party making claim as appropriator of waters as a riparian owner, under said federal laws, may, in addition to such claim by actual appropriation and user of said waters, gain additional riparian rights by such user; and such additional right would vest at end of period necessary to acquire same by prescription; but such additional rights are subsequent to and inferior to rights which the several parties claimant may have acquired through the sanctioned methods of appropriation; and priority as between such additional rights governed by dates on which such rights became vested in the several parties.

5. Same—Appropriation Prior to Date of Opening Land to Public, Continued Appropriation Thereafter, Effect.

While no riparian right through attempted appropriation of waters on land in Indian country prior to its being thrown open to public entry, can be established, yet such appropriation is not an idle act if continued after that date; and held, that all appropriations initiated prior to February 28, 1877, (when the lands ceased to be Indian lands and became open to homestead entry), and which were carried on by customary acts thereafter, became effective as of that date.

6. Public Waters—Appropriation Of, As Inuring to Benefit of Both Appropriator and Public—Public As Interested Party, Adjudication Re For Benefit of All.

Public waters, subject as such to appropriation, are to be appropriated and used not only for appropriator's benefit, but also for that of the public; since it is to public interest that waters shall be conserved for benefit of mankind; hence in disputes between claimants of public waters, the public is an interested party, and every judicial determination re rights to use of waters should consider and protect public rights, and should restrict claimants' rights so as to conserve the waters that they may eventually bring greatest benefit to the public.

7.  Public Waters—Appropriator's Right Re Irrigation, Limited by Ditch Capacity and Actual Needs—User Limited by Needfulness.

Rights of an appropriator of public waters are limited by capacity of ditch originally established and under which right is claimed, and also by amount of water actually needed for purpose for which appropriated; hence the appropriator's right, as to amount, is not determined either by size of ditch originally constructed, by amount of water originally claimed, or by amount in fact used—it cannot exceed amount needful for appropriated purposes.

8.  Same—Semi-arid Region, Effect Re Amount of Riparian Right—Ordinary Year as Rule.

In a semi-arid region, one appropriating water for irrigation has no right to same volume of water per acre he would have in a region of plentiful rainfall, nor can the amount be based upon amount that might be put to beneficial use during an exceptionally dry season, the amount needed in the ordinary year governs.

9.  Same—Soil, Nature of as Determining Factor—Absorptive Quality of Soil Not Measure of Right.

In determining amount of water claimant is entitled to, nature of soil must be considered; some soils needing more water than others; but fact that particular soil may need more does not necessarily entitle it to more; excessive amount cannot be appropriated simply because gravel subsoil needs more, since unwarranted waste would follow from porousness.

10.  Same—Irrigation, Amount of Water Necessary—Evidence, Weight Of.

Careful consideration of all evidence in the case leads to opinion that overwhelming weight thereof is, that not to exceed three-fourths of an inch of water per acre is necessary for proper irrigation of any of the land in question fit for irrigation.

11.  Same—Amount of Water, Seepage, Wasteful Methods, Non-right to When Injury to Others Results.

As to allowance for seepage of water in distribution among distributees, held, that wasteful methods so common with early

settlers, can be deemed a privilege permitted only because exercisable without substantial injury to others; no right to such methods of use was thereby acquired.

**12.**   **Same—Conservation of Waters to Meet Public Welfare—Measure of at Intake—Seepage Allowance, Basis of.**

Waters belonging to public must be so conserved as to meet public welfare, amount to which party is entitled must be measured at intake; appropriator alone must suffer through faulty conduits; allowance for sepage should be based on distance from intake to land irrigated, and not on nature of soil; no right to extra water exists because of extra seepage.

**13.**   **Same—Beneficial Use, as Measure of Appropriator's Right on Amount Timely Appropriated, Reasonable Time, How Determined—Priority, Basis of Re Use.**

The amount of water an appropriator is entitled to is governed by amount he benficially uses and appropriates within reasonable time from initiation, each case depending on its own facts as to reasonableness of time; trial court should find as to what time after initiation was reasonable for completing ditches and making beneficial use of waters sought to be appropriated; then court should determine priority of right as of date of actual use.

**14.**   **Same—Trial Court's Error Re Priority Under Later Appropriation—Rule Stated.**

Under the evidence, held, that trial court erred in amount of water declared inferior in right to later appropriators.

**15.**   **Same—Amount of Water Per Acre, Whether Greater Because of Small Tract—Approved Methods of Handling, Resulting Right Re.**

Trial court erred in finding that a greater amount of water was allowable to claimants because of smallness of tracts; court should consider most approved methods of handling water to produce best results; and if amount to which a small tract is entitled would not produce stream of size to be practicable for irrigation, court should give to such appropriator right to use sufficient water to create an adequate flow for proper irrigation, and limit time during which it could be used.

**16.**   **Same—Distribution of Irrigation Waters Where Public and Prior Rights Involved, Safe-guarding All Interests—Distribution Through Different Ditches on Alternative Days, Rule Stated—Headgates, Rule Re—Judgment Subject to Supplemental Orders and Judgments**

Where, as in instant case, distribution of public waters for irrigation purposes involves great public and private rights, court should effectuate best methods of irrigation as safeguarding best interests of all concerned; and evidence may satisfy trial court that claimants should under some ditches

take water from the stream during certain days, and claimants under other ditches during remaining days of a given week, allowing increased flow during such days; to which end it may be necessary to have installed headgates different from . those now in use; and the judgment rendered should not be final, but subject to such supplemental orders and judgments as from time to time may be necessary to accomplish equitable adjustment and control of all parties' rights.

17.   **Same—Unjustifiable Selfishness. of Claimants, Costs Adjudged Against Them.**

It appearing from the evidence that this litigation was necessitated by unjustifiable selfishness of claimants under certain designated ditches, plaintiffs should—the judgment herein being reversed—recover costs against said claimants-defendants.

McCoy, J., dissenting.

Appeal from Circuit Court, Lawrence County.  Hon. JAMES McNENNY, Judge.

Action by Joseph E. Cook and others, against Robert H. Evans and others, as designated statutory appropriators of public waters (No. 4533), for judicial determination of the rights of plaintiffs and of the parties defendant, some of whom claim as appropriators and others claiming waters as riparian owners; by Joseph E. Cook and certain other plaintiffs, against Robert H. Evans and certain other defendants (No. 4534) for similar relief; and by Joseph E. Cook and certain other parties against Robert H. Evans and certain other defendants (No. 4535) for similar relief; the three cases having been consolidated and tried as one. From a judgment based. upon findings, which, in the main, were favorable to defendants, and especially to those claiming under the first four appropriations, plaintiffs, in case No. 4533, appeal; defendant Owen in case No. 4534 appeals; and defendant Matthews in case 4535 appeals.  Judgment as to defendant Homestake Mining Company, affirmed; otherwise, reversed, and cases remanded to trial court for further evidence.

*Hayes & Heffron,* for Plaintiffs.
*Martin & Mason,* for Defendants.

(2)   To point two of the opinion, Appellant represented by Hayes & Heffron cited:  Act Cong. of Mch. 3, 1877, as barring subsequent "riparian" rights, and as following the Act of 1866 and more definitely limiting such rights; Kansas v. Colorado (U. S.) 51 L. Ed. 956.

(4) To point four, Appellant represented by Hayes & Heffron cited: Crawford v. Hall (Neb.) 60 L. R. A. 9034.

(7) To point seven, Appellant represented by Hayes & Heffron cited: Laws 1881, Ch. 142, Sec. 9, to effect that limitation of riparian rights is statutory, such limitation not existing under local customs of settlers during 1877-8.

(10) To point ten, Appellant represented by Martin & Mason cited: Red Water Land Co. v. Reed, 26 S. D. 466; Driskill v. Rebbe (on rehearing) 28 S. D. 331.

(13) To point thirteen, Appellant represented by Hayes & Heffron cited: Kinney on Irrigation, 175-6; Gould on Waters, par. 231; and cases therein cited.

(16) To point sixteen, and to proposition that riparian right is subject to judicial control, Appellant represented by Hayes & Heffron cited: Harris v. Harrison (Cal.) 29 Pac. 325; Lone Tree Ditch Co. (S. D.) 91 N. W. 352.

WHITING, J. About the year 1876, several parties settled in the Spearfish Valley. These parties found this valley to be semi-arid, and that, in the ordinary season, in order to bring best agricultural results, it would be necessary to irrigate the farm land. With the object of appropriating water for irrigation purposes, they did, during the year 1876 and the years immediately succeeding thereto, open up ditches and take waters from Spearfish creek. Contiguous owners united in the establishment of a single ditch, so that, while there was quite a number of these settlers, there were eight separate appropriations, and these all for irrigation purposes. The order of time in which the ditches were established does not seem to be in dispute; and, except as hereinafter noted, there is no dispute but that the rights of the claimants under one ditch, as against those under the others, rank in priority according to the time of the original act of appropriation under such ditch and to the extent of the original appropriation. The summer of 1914 was an unusually dry season; and those claiming under the first three appropriations took from the stream practically all its waters, leaving to the claimants under the fifth appropriation an amount of water wholly inadequate to their needs, and to some of the appropriators no water whatsoever. Apparently realizing what the future had in store for them, the claimants under the fifth appropriation brought this action, seek-

ing a determination of the rights of the claimants under the various ditches, and also the rights of certain parties who claim to be entitled to water as riparian owners. The trial court made findings which, in the main, were favorable to the defendants and especially to those claiming under the first four appropriations. Three appeals have been taken, being appeals on the part of plaintiffs and on the part of some of the defendants. These appeals have been submitted together. Inasmuch as, under the views which we hold, this case must be remanded to the trial court for further proceedings in said court— including, undoubtedly, the receipt of further evidence—we deem it unnecessary to review in detail the evidence received or to note separately the several rulings of the trial court; but shall confine ourselves to an announcement of those rules of law which we deem to be supported by reason and authority and to be applicable to the facts of this case. The rights of defendant Homestake Mining Company, as determined by the trial court, not being questioned on this appeal, the judgment of the trial court, determining the rights of such defendant, will not be disturbed by the judgment of this court.

[1] There are numerous riparian claimants, many of whom also make claims as appropriators. It is contended that no riparian rights could be acquired through an entry upon land or other act done prior to February 28, 1877, the date these lands ceased to be Indian lands and therefore became open to entry by settlers. It is also contended that, by the act of Congress of date March 3, 1877 (U. S. Comp. St. §§ 4674-4678), the "Desert Land Act," all public waters ceased to be the subject of future acquisition under riparian claims. It will readily be seen that, if these contentions are sound, the only period during which a riparian right could have been acquired was the few days between February 28 and March 3, 1877; and the record before us does not disclose that any entry was made upon the public domain, under the federal laws, during that short period. We are of the opinion that no riparian right could be acquired until the claimant had a lawful right to and did make entry upon the lands which he claimed to be riparian.

[2] Whether or not the Act of March 3, 1877, severed all riparian rights from the public lands not then filed on by settlers, by dedicating all remaining public waters to the public for the

purpose of and subject only to appropriation, is a most important and far-reaching question. It is urged by the riparian claimants that this court, long ago, established the law of this state on this matter, and that the law so announced has become a rule of property and has fixed the property rights of all who have entered upon the public domains and acquired title to lands, whether or not the entries were prior to or subsequent to March 3, 1877. An examination of the various decisions of this court touching upon riparian rights will disclose that this court has never determined the effect of the said act upon the acquisition of future riparian rights; and nothing can be better settled than the rule that no decision can become binding under the rule of stare decisis, and thus be claimed to have established a rule of property, unless there was before the court, when it made such decision, the identical question before the court when the rule of stare decisis is relied upon. This identical question was raised by appellant in Henderson v. Goforth, 34 S. D. 441, 148 N. W. 1045, but because of other matters that were controlling in that case, this court said:

"We are not called upon, therefore, to determine the effect of the proviso in the federal Desert Land Act of March 3, 1877, or to consider the decisions of the courts construing the same."

[3] We are called upon to decide for the first time the effect of the Act of March 3, 1877. Reading that act in connection with the previous acts of Congress in relation to public lands, we are of the opinion, as held in Hough v. Porter, 51 Or. 318, 95 Pac. 732, 98 Pac. 1083, 102 Pac. 728, that, by said act, Congress did sever from all public lands not then lawfully entered upon, all rights to the use of the waters adjacent thereto except the riparian right to use such waters for domestic purposes; and that the government, by said act, did dedicate to the public, and thus render subject to appropriation in acordance with existing or future laws and customs, for irrigation, mining, manufacturing, and other proper purposes, all remaining public waters. The reasoning in the opinion in Hough v. Porter, supra, is so lucid and convincing that we feel justified in resting our ruling thereon without referring to other authorities except those cited in such opinion. Unless, upon the further hearing of this case, it shall be found that some of those who are claiming riparian rights to

the waters of Spearfish creek made their entries after February 28, 1877, and prior to March 3, 1877, all questions of riparian rights to the waters of this stream will be removed from this case.

[4] It does not follow, however, that a party who now makes claims as riparian owner may not be entitled to recognition as one who has gained rights by user. If in attempting to make use of their claimed riparian rights, certain of these parties have, in fact, actually appropriated waters to their own use in addition to such waters as they may have heretofore claimed as appropriators, they may, through user, have acquired rights that should be determined in this action. Such additional rights, not being based upon such acts of procedure, sanctioned by law or custom, as would constitute in law an appropriation, would vest at the end of the period necessary to acquire same by prescription. Under the facts of the case before us, all rights so acquired would be subsequent to and inferior to those rights which the several parties may have acquired through the sanctioned methods of appropriation; furthermore, priority as between such additional rights would be governed by the dates upon which such rights became vested in the several parties.

[5] Plaintiffs contend that an appropriation instituted prior to February 28, 1877, has no validity. While it is true that such an attempted appropriation cannot confer any valid rights prior to February 28, 1877, yet the acts are not idle if continued after that date. Such a case is analogous to the facts in the mining case of Caledonia Mining Co. v. Noonan, 3 Dak. 189, 14 N. W. 426, and Noonan v. Caledonia Mining Co., 121 U. S. 393, 7 Sup. Ct. 911, 30 L. Ed. 1061, and, under the authority of those cases, we hold that all appropriations initiated prior to February 28, 1877, having been carried on by customary acts after that date, became effective as of that date.

[6] It must be borne in mind at all times that public waters, subject as such to appropriation, are to be appropriated and used, not only for the benefit of appropriators, but also for the benefit of the public. The very foundation of the right of appropriation is the fact that it is to the public interest that waters shall not be allowed to run waste and thus not benefit mankind—and what benefits man benefits society, of which he is a unit. It follows, therefore, that, in all disputes between claimants of public waters,

the public itself is a vitally interested party; and that every adjudication by a court as to rights to the use of water should take into consideration and should fully protect the rights of the public, and should restrict the rights of the claimants in such manner as to properly conserve the waters so that they may, in the end, bring the greatest benefit to the public.

[7, 8]   The right of an appropriator of public waters is limited by the capacity of the ditch originally established and under which the right is claimed; but such right is also limited by the amount of water actually needed for the purpose for which the appropriation was made. It follows that the amount of water to which one has acquired a right is not to be determined either by the size of the ditch originally constructed, by the amount of water originally claimed, or by the amount of water which may have, in fact, been used—it can never exceed the amount needful for the purpose in contemplation of the appropriator at the time of his appropriation. As above mentioned, the lands in question are situated in a semi-arid region in which the amount of rainfall varies from year to year. In a semi-arid region, one who appropriates water for irrigation has not a right to the same volume of water per acre as he would have in a region where there was no rainfall; neither can he base the amount to which he is entitled upon the amount that might be put to beneficial use on his land during an exceptionally dry season—it is the amount that is needful in the ordinary year that should govern.

[9]   Another matter, that must be taken into consideration in determining the amount of water which a claimant is entitled to, is the nature of the soil to be irrigated. Some soils need more water than others, and are entitled to more; but the fact that a particular soil may need more does not necessarily entitle it to more. It can readily be seen that a court should not allow an excessive amount to be appropriated or used simply upon the plea that, because of a gravel subsoil, such amount is needful; a subsoil may be so porous that to turn water into it is a mere unwarranted waste of same, and there may be gravel spots upon which it would be utterly useless to turn any water. The trial court found that different tracts of land were, for different causes, entitled to varying amounts of water. Thus it allowed to one tract 1½ inches because of a 25 per cent. seepage of water while

flowing through the ditches leading to this tract; while to another tract was allowed an inch of water, though it was found that, as to such tract, there would be 15 per cent. seepage. Computation shows that, in the one case, 1.125 inches of water must have been deemed necessary for the land, and, in the other, but .85 of an inch.

[10, 11] We have carefully considered all the evidence in this case; and we are of the opinion that the overwhelming weight thereof is to the effect that not to exceed ¾ of an inch of water per acre is necessary for the proper irrigation of any of the land that is fit for irrigation. Should there be any allowance whatsoever for seepage? As said by the court in Hough v. Porter, supra:

"The wasteful methods so common with early settlers can, under the light most favorable to their system of use, be deemed only a privilege permitted merely because it could be exercised without substantial injury to any one; and no right to such methods of use was acquired thereby."

[12] In line with the above, we hold that the waters belonging to the public must be so conserved as to meet the public welfare; that the amount of water to which a party is entitled must be measured at the intake; that, in conducting the water to the land where same is to be used, the appropriator alone must suffer through any faulty conduits; that any allowance for seepage should be based on distance from intake to land to be irrigated and not at all upon the nature of the soil over or through which the conduits pass and that no party has a right to claim extra water because of extra seepage.

[13] The amount of water to which an appropriator is entitled is governed not only, among other things, by the amount which he applies to a beneficial use, but also by the amount so applied within a reasonable time from the initiation of his appropriation. What is a reasonable time must vary as between different localities, and might even vary as between localities not far removed one from another. Each case must, of necessity, rest upon its own facts; but the trial court, after weighing all the facts, should make a finding as to what time after the inception of the appropriation he finds to have been a reasonable time for completing the ditches and making beneficial use of water sought

to be appropriated. After having found the number of years that, under the circumstances, is a reasonable time, then the court cannot grant to any claim of water right, which was not consummated by actual use until after the expiration of such time, priority as of the date of the initiation of the appropriation upon which based; but its priority must date from the time of actual use.

[14] It is contended that the trial court erred in holding that a certain amount of the water allowed plaintiffs should not have priority over the later appropriations. We think the court erred in the amount declared inferior in right to such later appropriators.

[15] In the case of one small tract of land, the trial court found that the claimants of water therefor were entitled to four inches per acre, and it based such finding upon the fact that it was a small tract. With such conclusion we cannot agree. No tract under irrigation should be given a greater amount of water per acre simply because of its size. On the other hand, the trial court has the right to, and should take into consideration, most approved methods of handling water so as to produce the best results. If the amount per acre to which a small tract of land is entitled would not produce a stream sufficient in size to be practicable for irrigating purposes, the court should then give to such appropriator a right to use a volume of water sufficient in size to create an adequate flow for proper irrigation, and limit the time during which such water can be used.

[16] In line with what we have just stated, the court, in a case such as this, involving as it does such great public and private rights, and in which it has jurisdiction over all parties in interest, should attempt to determine and to put into effect, the best methods of irrigation, in order to safeguard the best interests of all concerned, including the public. It may well be that the evidence of witnesses, practical farmers and experts, will satisfy the trial court that it would be better to require the claimants under some of the ditches to take water from the stream during only certain days of each week, and the claimants under the other ditches to take water from such streams during the remaining days of such week, rather than to have water running through all the ditches all the time. In such case, the judgment should so

provide, allowing of course for an increased flow during such days. Furthermore, it may be necessary, in order to properly control the distribution of this water, that there be installed headgates different from those now in use. Such court, when this case is remanded to it, will have full power to do that which equity may require. It should declare, in whatever judgment shall be rendered hereafter, that such judgment is not final but subject to such supplemental orders and judgments as to the court may seem from time to time necessary for the accomplishment of the end sought— the equitable adjustment and control of the rights of all the parties to this litigation and the rights of the public.

[17] The Judgment appealed from is reversed. Inasmuch as it is clear, from all the evidence herein, that this litigation was made necessary by the unjustifiable selfishness of the claimants under what are known as the Evans-Tonn, the Matthews, and the Walton ditches, the plaintiffs should have judgment against these defendants who claim under such ditches, for plaintiffs' costs herein; except as so directed, each party shall pay his own costs.

McCOY, J., dissents.