BELLE FOURCHE IRRIGATION DISTRICT, Respondent

v.

SMILEY, Appellant

(176 N.W.2d 239)

(File No. 10574. Opinion filed April 7, 1970)

**Kellar & Kellar & Driscoll,** Lead, **Smiley & Anderson,** Belle Fourche, for defendant and appellant.

**Gordon Mydland,** Atty. Gen., Pierre, for interveners and respondents.

**Stephens & Brandenburg,** Belle Fourche, for plaintiff and respondent.

ROBERTS, Presiding Judge.

This action was brought by plaintiff Belle Fourche Irrigation District against defendant R. A. Smiley to enjoin him from interfering with the rights of the plaintiff in the waters of the Belle Fourche River and from diverting for irrigation waters impounded by the Keyhole Dam in Crook County, Wyoming, and released by the Bureau of Reclamation through the channel of the Belle Fourche River for the use of the plaintiff. The State of South Dakota and the water resources commission, with leave of court, intervened and filed a complaint in intervention alleging that the commission is authorized by law to regulate and control the development, conservation and allotment of the waters of the state according to principles of beneficial use and priority of appropriation and that defendant without right of appropriation diverts waters from the Belle Fourche River for the irrigation of lands owned by him which are upstream from plaintiff's diversion point and thereby unlawfully interferes with the irrigation

of lands in plaintiff district and with interveners in administering the water laws of the state. Following trial, the court made findings of fact and conclusions of law and entered judgment enjoining defendant from diverting waters of the Belle Fourche River for the irrigation of land owned and controlled by him and his wife, except that the defendant has water rights with priority date of May 1, 1953, which entitle him to divert 2.78 feet per second of water from such river for the irrigation of a portion of his land not to exceed 195 acres during the period of May 1 to October 31, each year. From the judgment, defendant appeals.

The Belle Fourche River, a nonnavigable stream, whose headwaters are in the State of Wyoming, flows in this state southeasterly across Butte County to its junction with the Cheyenne River in Meade County. For an understanding of the locale, a photostatic copy of a sketch map of a part of the Belle Fourche River basin is here inserted.

[A1437]

The pertinent stipulated facts are summarized as follows:

The Belle Fourche Project is a federal irrigation works authorized by the Reclamation Act of June 17, 1902 (43 U.S.C.A. § 371 et seq.). The Secretary of Interior pursuant to the provisions of that act entered into a contract on October 25, 1905, with the Belle Fourche Valley Water Association, a corporation, for supplying water for the benefit of shareholders and for the guaranty of payment of construction costs and operation and maintenance charges apportioned to shareholders. The Belle Fourche Irrigation District was thereafter formed under the laws of this state providing for the organization and management of irrigation districts. Plaintiff entered into a contract with the Secretary of Interior, dated November 26, 1923, providing that cooperation with the United States thereafter be had through the district and that payments of construction costs and operation and maintenance charges be made through the district utilizing its powers of assessment and levy conferred by state law. Effective January 1, 1949, there was a transfer of the maintenance and operation of the irrigation works to plaintiff district. The operation of the project has continued under the 1949 agreement and water for domestic and municipal uses and the irrigation of lands of water users within the district is presently provided by plaintiff.

Plaintiff obtains most of its water supply from the Belle Fourche River. A concrete dam, situate one and one-half miles down stream from the City of Belle Fourche, has a diversion capacity of 1440 cubic feet of water per second through an inlet canal, which is six and one-half miles long, either into the Belle Fourche Reservoir or into a canal known as the Johnson Lateral. Ormond Dam, which is situate about nine miles east and three miles north of Belle Fourche, is an earthen structure extending across Owl Creek. Waters of the Belle Fourche Reservoir are impounded behind this dam and the area irrigated by water so stored lies easterly of the reservoir.

The Keyhole Dam across the Belle Fourche River in Crook County, Wyoming, was authorized to be constructed under federal reclamation laws and was completed in 1952. A contract

was entered into between the Federal Bureau of Reclamation and plaintiff district for the release of water stored in such reservoir for reasonable and beneficial use in plaintiff district.

The lands owned by appellant across which the Belle Fourche River flows are situate about four miles west of the City of Belle Fourche. The lands were purchased by appellant and conveyed to him in the years 1940, 1943 and 1951. All the lands in question were settled upon and patents issued to predecessors in interest subsequent to the enactment by Congress of the Desert Land Act of March 3, 1877 (43 U.S.C.A. § 321 et seq.).

The appellant since purchase of the land here involved has used varied amounts of water from the Belle Fourche River for domestic and livestock requirements and since 1953 has pumped water from the river, including waters released from the Keyhole Reservoir, for irrigation of his lands. The waters diverted and used by the defendant would have been beneficially used by the plaintiff district during those times when the flow of water at the diversion dam did not exceed 1440 cubic feet of water per second except when the Belle Fourche Reservoir was full or there existed an emergent situation in the irrigation works. The appellant diverted water from the river at times when the flow at the diversion dam was below its capacity and the reservoir was not full and there was no emergency of the nature indicated.

The plaintiff district at all times herein material had ample storage facilities in the reservoir behind Ormond Dam to store and use for beneficial purposes all of the waters of the Belle Fourche River to which it claims a right. The plaintiff district and its water users have been and will continue to be deprived by the acts of the defendant of amounts of water to which they would otherwise have been or will be entitled to use for the annual wetting, irrigation and fertilization of their irrigable land.

It was further stipulated that A. M. Blackford, if called as a witness for the plaintiff, would testify as follows: "I came to the Smiley place in the Spring of 1946. I was there until the Fall of 1955. I was a partner in the livestock end of the farming

operation and crops raised and on part of the equipment. However, when I came on the place, the equipment and machinery which was there belonged to Mr. Smiley. There was no pump or irrigation equipment or irrigating being done at that time, namely, in 1946. There was an old ditch which came out of a reservoir across the road South and West of the buildings one mile. That ditch terminated in a field just North of and adjacent to the farm buildings. It did not appear to have been used for many years. It was washed out and filled up and part of it was obliterated. This field I would estimate was about 30 acres. I believe it was in 1952 when Mr. Smiley said we should get some irrigating going and he started looking into and investigating rights and so forth. In the Spring of 1953 he told me it was okay to go ahead and that he figured he had the right to pump water out of the Belle Fourche River. So we bought a pump, being either a 6 inch or 8 inch pump, I forget which, and about 800 feet of aluminum piping, fitted with about 35 or 40 sprinkler heads".

Appellant's witness, James N. Eaton, testified that an irrigation pump was hauled to the property possibly in 1902 and for a number of years he observed irrigation being carried on by prior owners. Appellant testified that he observed at the time of purchase ditches on a portion of the land and an engine and a pump near the river.

This court in Cook v. Evans, 45 S.D. 31, 185 N.W. 262, and Haaser v. Englebrecht, 45 S.D. 143, 186 N.W. 572, decided in 1924, held that the Desert Land Act of 1877 effected a severance of all waters upon the public domain and that a patent issued thereafter under the laws of the United States carried with it no common law right to the waters flowing over the land conveyed. The Cook and Haaser cases were cited by the Supreme Court in California-Oregon Power Co. v. Beaver Portland Cement Co., 295 U.S. 142, 55 S.Ct. 725, 79 L.Ed. 1356 (1935). It was there established that the United States as owner of the public domain has the power to dispose of land and water together or separately and that the Act of 1877 did not pass title to appurtenant water rights. The court stated, however, that it did not intend to

suggest that water rights shall not be determined by the laws of the respective states and territories. It said: "What we hold is that following the act of 1877, if not before, all nonnavigable waters then a part of the public domain became publici juris, subject to the plenary control of the designated states, including those since created out of the territories named, with the right in each to determine for itself to what extent the rule of appropriation or the common-law rule in respect of riparian rights should obtain. * * * The Desert Land Act does not bind or purport to bind the states to any policy. It simply recognizes and gives sanction, in so far as the United States and its future grantees are concerned, to the state and local doctrine of appropriation, and seeks to remove what otherwise might be an impediment to its full and successful operation."

It does not appear that appellant or any of his predecessors in interest ever sought under the laws of this state appropriation rights in the waters of the Belle Fourche River. Appellant contends that as a riparian owner he is entitled to the natural flow of the river across his land and the rights of a riparian proprietor recognized by territorial and state statutes and decisions of this court.

The following amendment was added to the Constitution of this state, § 7, Art. XXI, by a proposal submitted by Chap. 229, Laws 1915, and adopted in 1916:

"The irrigation of agricultural lands is hereby declared to be a **public purpose** and the Legislature may provide for the organization of irrigation districts for the irrigation of land, and may vest the corporate authorities thereof and the corporate authorities of counties, townships and municipalities with the power to construct, operate and maintain irrigation dams, reservoirs, canals, flumes, ditches and laterals, and to keep in repair all irrigation dams, reservoirs, canals, flumes, ditches and laterals heretofore constructed, under the laws of the state, by special assessments upon the property benefited thereby, according to the benefits received."

The irrigation of agricultural lands is thus declared to be a public purpose and the legislature is expressly authorized to provide for the organization of irrigation districts. The Constitution contains no specific provision relating to the dedication or control of either surface or underground waters.

Section 255, Revised Civil Code 1877 (orignated as § 256, Civil Code, Laws 1866) provided:

"The owner of the land owns water standing thereon, or flowing over or under its surface, but not forming a definite stream. Water running in a definite stream, formed by nature over or under the surface, may be used by him as long as it remains there; but he may not prevent the natural flow of the stream, or of the natural spring from which it commences its definite course, nor pursue nor pollute the same."

In Redwater Land & Canal Co. v. Reed, 26 S.D. 466, 128 N.W. 702, it is stated that this section was the same as section 256 of the New York Civil Code as proposed by the Code Commission of that state and is declaratory of the common law doctrine applicable to the rights of riparian owners. The section as combined with other statutes and revised for clarity was included in the South Dakota Code of 1939, § 61.0101.

Section 1, Chap. 142, Laws 1881 (C.L. 1877, § 2029; Pol.Code 1903, § 2563) provided:

"That any person or persons, corporation or company, who may have or hold a title or possesory right or title to any mineral or agricultural lands within the limits of this Territory, shall be entitled to the usual enjoyment of the waters of the streams or creeks in said Territory for mining, milling, agricultural or domestic purposes; **Provided:** That the right to such use shall not interfere with any prior right or claim to such waters when the law has been complied with in doing the necessary work."

This court held that the Act of 1881 did not impliedly repeal the provisions of section 255, supra, and that a riparian owner had a right to use waters of a stream for irrigation not previously appropriated. Lone Tree Ditch Co. v. Cyclone Ditch Co., 15 S.D. 519, 91 N.W. 352, modified and remanded with directions on rehearing, 26 S.D. 307, 128 N.W. 596; see also Sturr v. Beck, 6 Dakota Rep. 71, 50 N.W. 486, affirmed 133 U.S. 541, 10 S.Ct. 350, 33 L.Ed. 761.

A statute was enacted in 1907 prescribing regulations for the appropriation, distribution and use of water for irrigation and other beneficial uses. Chap. 180, Laws 1907. Section 1 of the act provided: "All the waters within the limits of the state from all sources of water supply belong to the public and, except as to navigable waters, are subject to appropriation for beneficial use." Section 19 of the act required a permit from the state engineer to authorize appropriation of waters to a beneficial use. These and other parts of the statute were declared unconstitutional to the extent that they infringed vested rights to use waters for domestic and irrigation purposes. St. Germain Irrigating Ditch Co. v. Hawthorne Ditch Co., 32 S.D. 260, 143 N.W. 124. This court in that case said: "The right of a riparian owner to make a reasonable beneficial use of the waters of a flowing stream for domestic and irrigation purposes is a vested property right and is entitled to protection to the same extent as property rights generally." The act there considered contained no provisions comparable to existing statutory provisions defining, determining and protecting vested rights as we will hereinafter point out.

This court in Platt v. City of Rapid City, 67 S.D. 245, 291 N.W. 600, referred to many of the earlier decisions of this court pertaining to water rights and observed that under the territorial statutes, above quoted, water rights in the streams of the state could be acquired either by settlement or appropriation. This court concluded that it had erred in its holding in Cook v. Evans, supra, to the effect that the Desert Land Act prevented vesting of riparian rights as to lands settled upon or entered after March 3, 1877. California-Oregon Power Co. v. Beaver Portland Cement

Co., supra, held as indicated that it is the right of each state to determine for itself to what extent the rule of riparian rights should obtain. Since predecessors in interest had under the laws of this state acquired riparian rights through settlements, it was the holding of this court that the vested rights of plaintiff Platt to use the waters of Lime Creek to irrigate her lands could not be impaired by defendant city. It should be noted that plaintiff in that case made beneficial use of the waters of the stream and riparian rights to unused waters were not involved.

The legislature enacted Chapter 430, Laws 1955, recognizing the right of riparian owners and other appropriators to continue use of water actually applied to benefical use and amending and repealing prior statutory provisions. Using section numbers in the South Dakota Compiled Laws 1967, we refer to and quote pertinent provisions:

"46-1-1. Use of water of state-Paramount interest of people-Conversion to public use.-It is hereby declared that the people of the state have a paramount interest in the use of all the water of the state and that the state shall determine what water of the state, surface and underground, can be converted to public use or controlled for public protection."

"46-1-2. Development of water resources of state for public benefit.-It is hereby declared that the protection of the public interest in the development of the water resources of the state is of vital concern to the people of the state and that the state shall determine in what way the water of the state, both surface and underground, should be developed for the greatest public benefit."

"46-1-3. Water as property of people-Appropriation of right to use.-It is hereby declared that all water within the state is the property of the people of the state, but the right to the use of water may be acquired by appropriation in the manner provided by law."

"46-1-4. Beneficial use of water resources-Prevention of waste-Right to water from natural stream or watercourse.-It is

hereby declared that because of conditions prevailing in this state the general welfare requires that the water resources of the state be put to beneficial use to the fullest extent of which they are capable  *  *  *."

"46-1-6. Definition of terms.-Terms used in this title, unless the context otherwise plainly requires, shall mean:  *  *  * (6) 'Beneficial use,' any use of water that is reasonable and useful and beneficial to the appropriator, and at the same time is consistent with the interests of the public in the best utilization of water supplies;  *  *  *."

"46-1-8. Beneficial use-Measure and limit of right to use of waters.-Beneficial use is the basis, the measure and the limit of the right to the use of waters described in this title."

"46-1-9. Vested rights defined.-The term 'vested rights' used in this title, unless the context otherwise requires, shall mean:

(1)  The right of a riparian owner to continue the use of water having actually been applied to any beneficial use on March 2, 1955 or within three years immediately prior thereto to the extent of the existing beneficial use made thereof;

(2)  Use for domestic purposes as that term is defined in § 46-1-6;

(3)  The right to take and use water for beneficial purposes where a riparian owner was engaged in the construction of works for the actual application of water to a beneficial use on March 2, 1955, provided such works shall be completed and water is actually applied for such use within a reasonable time thereafter;

(4)  Rights granted before July 1, 1955 by court decree;

(5)  Uses of water under diversions and applications of water prior to the passage of the 1907 water law and not subsequently abandoned or forfeited."

"46-5-5. Waters flowing in definite stream subject to appropriation-Beneficial use-Excessive appropriation not allowed. Subject to vested rights and prior appropriations, all waters flowing in definite streams of the state may be appropriated as herein provided. Such appropriation shall not constitute absolute ownership of such water, but shall remain subject to the principle of beneficial use. Appropriation in excess of the reasonable needs of the appropriators shall not be allowed."

■■■ As previously indicated riparian rights at common law exist independently of use or appropriation, and a riparian owner may indefinitely retain riparian rights in a stream though he takes no water therefrom for irrigation of his abutting land. The right passes with title to the land and is not gained by use or lost by disuse. St. Germain Irrigating Ditch Co. v. Hawthorne Ditch Co., supra. The declared purpose of Chapter 430, Laws 1955, is the maximum utilization of the water resources of the state. The first section of that act expressly repealed SDC 61.0101 containing the provisions originally enacted in 1866 and above quoted which were declaratory of the common law rights of riparian owners and thus modifying the doctrine of common law riparian rights and abrogating many decisions made thereunder the legislature has substituted the doctrine of prior appropriation and application to beneficial use of unused and unappropriated waters. It is clear that the commission and the water engineer in regulating and controlling irrigation perform ministerial duties only and must give full recognition and effect to existing vested rights as defined by the statute. From its decisions there is a right of appeal and review to the circuit court.

In Knight v. Grimes, 80 S.D. 517, 127 N.W.2d 708, this court held adversely to the claim that Chapter 431, Laws 1955, specifically providing that beneficial use shall be the basis and limit to the use of underground water, is invalid. The statute there considered also recognizes and affords protection to vested rights. Plaintiff therein was at the time of passage of the statute applying underground waters to the irrigation of a four acre tract. That was a right that had under the statute become vested

by reason of application to a beneficial use. This court held that the state could apply the doctrine of prior appropriation and application to beneficial use to unappropriated underground waters so long as protection was afforded to vested rights which a landowner had initiated and acquired at the time of passage of the statute. Decision in the Knight case concerned with underground waters is equally applicable to surface water. Williams v. City of Wichita, 190 Kan. 317, 374 P.2d 578; see also Baeth v. Hoisveen, N.D., 157 N.W.2d 728; Hutchins, Riparian-Appropriation Conflicts in the Upper Midwest, 38 N.Dak.L.Rev. 278 (1962); Munro, South Dakota and the Water Impasse, 11 S.D.L.Rev. 255 (1963).

■ The trial court found in substance that defendant has no appropriation rights of record for irrigation of lands owned by him and adjacent to the Belle Fourche River; that defendant diverts waters from the Belle Fourche River and uses the same for irrigation of his land "at his exclusive option and discretion as to time and amount and irrespective of regulatory orders issued to him by the Intervenors"; that such waters would have been diverted and used beneficially by water users in plaintiff district, particularly by users who irrigate lands in that portion of the irrigation project known as the "Inlet Canal and Johnson Lateral Lands", who depend entirely upon the flow of the Belle Fourche River or releases from the Keyhole Dam of stored water for their water supply and that "defendant does not share in the water rights acquired by the United States Bureau of Reclamation under provisions of the laws of the State of Wyoming and the Belle Fourche River Compact (SDCL 1967, 46-30) through contracts with the United States Bureau of Reclamation covering water service from Keyhole Dam and Reservoir." The court further found that defendant has vested rights as defined by the provisions of SDCL 1967, Title 46, by reason of diversion and beneficial use for irrigation purposes during the period of May 1953 to June 30, 1955, inclusive, and that July 1, 1955 to October 31, 1961, inclusive, was a reasonable period of time within which to complete construction of works for the application of water to beneficial use. The evidence, as we view it, sustains the foregoing findings.

Appellant contends that the findings and judgment limiting the quantity of water that may be diverted by him during a specified period each year and to be used upon a portion of his land, not to exceed 195 acres, are not sustained by the evidence.

Water flowing in definite streams of the state may be appropriated through proper administrative procedure, subject to **vested rights** and prior appropriations. Section 46-5-5, supra. It is thus a prerequisite to the determination of the availability of unappropriated waters in approving applications for water right permits to recognize existing water rights. It is the contention of interveners that in the allotment of unappropriated waters the commission must necessarily make determinations of existing water rights including extent of vested rights. While rights may be regulated and supervised by administrative process for the protection of appropriators of water, we do not think that such process can operate to divest rights that have already vested.

The trial court in a memorandum opinion states that the water resources commission has found "a vested right for irrigation dating back to May 1, 1953, based upon beneficial use by defendant, and set forth on pages 8 and 9 of Intervenor's brief, which in the view of this Court is fully supported by the evidence." The decision of the commission purporting to determine priorities and the quantity of water that may be diverted by appellant is not a part of the record and the basis of such action and adherence to statutory provisions do not appear. We are impelled to conclude that the findings in question are not sustained by the record.

█ The circuit court has jurisdiction to hear and determine questions necessary for the adjudication of water rights. SDCL 46-10. The statute is designed to afford a litigant in an action involving water rights adequate and complete relief.

We have previously held that an action may be remanded for determination of a single issue. Petersen v. Kemper, 70 S.D. 427, 18 N.W.2d 294; J. H. Larson Electrical Co. v. Vander Vorste,

81 S.D. 296, 134 N.W.2d 500. We think that the ends of justice will be better served by limiting the issue upon remand to an adjudication of the extent of the existing rights of appellant to the use of waters of the Belle Fourche River.

The judgment is reversed and the cause remanded for introduction of evidence and further proceedings consistent with this opinion and for judgment accordingly. No costs to be taxed.

All the Judges concur.